Amy LUCKETT, Widow of Jerry Preston Luckett, Deceased, Plaintiff-Appellant,

v.

CONTINENTAL ENGINEERING COMPANY, Defendant-Appellee.

No. 79–1381.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1980.

Decided May 22, 1981.

Charles S. Kelly, Kelly & Dearing, Dyersburg, Tenn., William C. Bateman, Jr., Memphis, Tenn., for plaintiff-appellant.

Henry T. V. Miller, McDonald, Kuhn, Smith, Gandy, Miller & Tait, Memphis, Tenn., for defendant-appellee.

Before WEICK and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

Plaintiff, Amy Luckett, brought suit in the district court under the Jones Act, 46 U.S.C. § 688 (1976), and the General Maritime Law of the United States to recover for fatal injuries sustained by her husband, Jerry Luckett, in the course of his employment by the defendant, Continental Engineering Company. The district judge entered summary judgment for Continental, holding that the deceased was not a "seaman" within the meaning of the Jones Act.

Since a summary judgment was entered, we construe the material facts properly before the court most favorably to plaintiff. Those facts, taken from the record, are tragic and bizarre.

## I.

Jerry Luckett was an assistant crew chief of a group of surveyors employed by Continental to survey the Forked Deer River, which runs into the Obion River and into the Mississippi River near Dyersburg, Tennessee. The crew normally used land vehicles during the dry months of the year to transport itself and the necessary equipment to the surveying sites. The surveyors, however, were more active in the winter months, when the absence of foliage improved the visability necessary for surveying. Since at this time of year the rivers were swollen and access roads were often impassable, the crew would start out by land vehicle, but take along a 16-foot boat and a 20 horsepower outboard motor to complete the journey. The boat was used to transport the crew and equipment up and down the river. Most of the actual surveying was done on shore, but from time

to time the boat also would be used to sound the river. Crew members would pilot the boat to the point in the river to be sounded, then a rod with numbers on it was lowered into the river to measure the depth. This measurement was then duly recorded.

The surveying crews for Continental had been carrying on similar work with use of boats since at least 1974. According to the affidavit of Donald Robinson, a fellow employee of Luckett, boats were used at least 60% of the time during his employment with Continental. In fact, according to the deposition of Randall Carmack, a Supervisor and Party Chief for Continental, the outboard motor in use the day of the accident was the fourth one Continental had purchased for the boats since this survey had been undertaken.

One of the problems faced by the surveying crew at this time of year was the abundance of cottonmouth snakes,[1] prompting the crew to carry a .22 caliber rifle in the boat. Occasionally, a member would also carry a pistol. According to Carmack's deposition, they had killed as many as fourteen snakes within one hour. On some occasions, the crews had had to abandon work because of this danger.

On February 28, 1978, a crew headed by Jerry Luckett was to survey along the Forked Deer River. A boat was used to transport the crew and its equipment to the point in the river to be surveyed. The boat was pulled onto shore and Luckett began setting up his surveying instruments. At the same time, one of the crew members spotted a tire on the riverbank and decided to reclaim it. He got the tire and rolled it into the boat where it struck the .22 caliber rifle, which was lying unguarded in the bottom of the boat. The rifle discharged and the bullet struck Luckett in the chest. The other employees immediately helped Luckett into the boat and tried to start the motor. On the first attempt, the starter rope broke. After considerable delay, the crew members got the boat started and

---

1. Cottonmouth snakes are also sometimes referred to as "water moccasins."

piloted it back to where they had left their truck. Luckett was finally transported to the Parkview Hospital in Dyersburg. Unfortunately, Jerry Luckett died from his injuries.

In granting summary judgment in favor of Continental, the district judge observed that "there is no question in the present case that the 16-foot flat-bottom boat was a vessel and was occasionally used in navigation on the river." Nevertheless, relying upon our circuit's decisions in *Nelson v. Greene Line Steamers, Inc.*, 255 F.2d 31 (6th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958), and *Noack v. American Steamship Company*, 491 F.2d 937 (6th Cir. 1974), he held as a matter of law that the undisputed material facts demonstrated that Luckett was not a seaman within the meaning of the Jones Act. Specifically, the district judge held as a matter of law that Luckett did not meet the second element of the following three-prong test required by the Sixth Circuit cases:

(1) the vessel on which deceased was employed must be in navigation;

(2) the claimant must have had a more or less permanent connection with the vessel; and

(3) the claimant must have been on board primarily to aid in navigation.[2]

## II.

The Jones Act specifically provides for jury trials of material issues of fact. 46 U.S.C. § 688 (1976). Plaintiff's complaint specifically requested a jury trial. Unlike *Nelson v. Greene Line Steamers, Inc., supra*, there is no suggestion in this case that plaintiff had at any time abandoned her jury demand and agreed that the issue should be decided in a bench trial. Nothing in these proceedings, therefore, suggests that the ordinary rules concerning the grant or denial of summary judgment ought not be followed here. To the contrary, Supreme Court and Sixth Circuit authorities suggest that the question of whether the decedent was a seaman within the meaning of the Jones Act is normally a question of fact to be decided by the jury where one is requested.

In *Nelson*, Judge Shackleford Miller, Jr. upheld the trial judge's finding that the decedent there was not in fact a seaman at the time of his death. Judge Miller, however, recognized that the issue was one of fact. He upheld the decision by the trial judge on that question, therefore, as the final decision of the trier of facts. On that basis, he found that the trial judge's determination was not clearly erroneous. *Nelson*, therefore, stands as authority recognizing that, in the normal case, whether an individual is a seaman is a question to be determined as a matter of fact, not as a matter of law.

Likewise, in *Noack*, Judge Peck, speaking for our court, upheld the jury's determination that the plaintiff was a seaman within the meaning of the Jones Act. The evidence showed that at the time of plaintiff's injuries he was employed as a wiper helping to clean the bilges of a lower ship engine. The ship had been laid up for the winter and was being outfitted for the ensuing sailing season. After reviewing numerous earlier cases, Judge Peck observed:

From our review, we conclude that each case must be evaluated on its own facts, thus leaving to the developing case law to draw the determining criteria into sharper focus. We recognize that while courts in the past have applied a technical, narrow view of what constitutes a vessel in navigation or the status of a seaman, today the courts are applying a broad view consistent with the trend to

2. We note that while plaintiff's complaint premised jurisdiction both on the Jones Act and the General Maritime Law of the United States, the trial judge's opinion appears to have been confined solely to the issue of whether plaintiff was a seaman under the Jones Act. Since the briefs of both parties are directed solely to that issue, we do not address any issue raised by plaintiff's General Maritime Law allegations.

provide a liberal interpretation to remedial legislation such as the Jones Act.

491 F.2d at 940.

Judge Peck's observations confirm our own independent research on the developing law under the Jones Act, a development which was clearly foreshadowed in *Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957). The petitioner in *Senko* was employed by the respondent to assist in certain dredging operations being conducted near the Mississippi River. His work was primarily that of a handyman and included the carrying and storing of supplies and the general maintenance of a dredge. He was injured by an explosion of a coal stove while placing signal lanterns from the dredge into a shed on a neighboring bank. Against the claim that petitioner was not a seaman within the meaning of the Jones Act, the Supreme Court stated that the fact that his injury occurred on land was not material and that "coverage of the Jones Act depends only on a finding that the injured was 'an employee of the vessel, engaged in the course of his employment' at the time of his injury." 352 U.S. at 373, 77 S.Ct. at 417 (citing *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 4, 66 S.Ct. 869, 870, 90 L.Ed. 1045 (1946), in turn citing *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943)).

While it was noted that the Supreme Court did not ordinarily sit to re-examine findings of fact, the Court was concerned that the lower courts had failed adequately to understand its decision in *South Chicago Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). There, the Court held that whether an employee is a "member of a crew" is normally a question of fact. Specifically, Justice Reed observed in *Senko*:

> Our holding there [*South Chicago Co.*] that the determination of whether an injured person was a "member of a crew" is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.

352 U.S. at 374, 77 S.Ct. at 417.

The Supreme Court in *Senko*, however, was not unanimous. A three-justice minority consisting of Justice Harlan, Justice Frankfurter, and Justice Burton disagreed. They argued that the petitioner's relationship to the dredge met none of the requirements set forth in *South Chicago Co.* The dissenters believed that Senko was an ordinary laborer with miscellaneous duties. They noted that Senko lived at home, drove to work every day, and bought his own meals. They also pointed out all the other evidence which had been used by the court of appeals to hold that Senko had no duties connected with navigation. The dissenting justices believed Senko was primarily connected with the construction gang with which he worked. A similar division of the Supreme Court with similar results may be seen in *Braen v. Pfeifer Oil Transportation Co.*, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959), and *Grimes v. Raymond Concrete Pile Co.*, 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958).

A reading of the foregoing cases reflects, in our judgment, the fact that the district court decision here is much more consistent with the dissents in those cases than with the majority opinions. A review of the facts here, construed most favorably to the plaintiff, fully satisfies us that a jury question was presented. Therefore, summary judgment was inappropriate.

It is true that the affidavits and depositions submitted on behalf of Continental emphasize the nature of Luckett's work on land and, conversely, minimized his activities in the boat. Continental stressed the fact that most surveying took place on land and that the crews were known as "land surveyors." Also, there were no specific designations of the crews in terms of function with respect to the boat.

On the other hand, the affidavits and the depositions of fellow employees raise, in our judgment, a substantial question of fact which required submission to the jury. There are at least seven salient material facts which, when construed most favorably to the plaintiff, might justify a jury in holding that Luckett was a seaman within the meaning of the Act:

1. Continental furnished its survey crew with a boat and a motor.

2. Luckett was a member of the survey crew which used the boat.

3. The boat was used to carry out a mission of the survey crew.

4. Luckett regularly, when he used the boat, assisted in loading and unloading it.

5. Because he was an assistant crew chief, Luckett himself usually operated the outboard motor most of the time the boat was in use.

6. The boat was used about 60% of the time when the survey crew worked.

7. The survey crew had been using the same boat about two years and had been using similar boats for many more years. In fact, the amount of usage was evidenced by the fact that the motor had been replaced three times since this surveying project had been undertaken.

Given the nature of the conflicts among the factual assertions of the parties, we believe that the district court's acceptance of the facts advanced by Continental as conclusive runs counter to the Supreme Court's holding in *Senko.*

Finally, under closely analogous facts, a plaintiff's decedent engaged in engineering, mapping, and surveying the Red River in Arkansas was held, after a trial on the merits, to be a seaman and entitled to the benefits of the Jones Act. *Spiller v. Lowe,* 328 F.Supp. 54 (W.D.Ark.1971). As here, a 16-foot aluminum boat was employed for that purpose. The boat capsized in the river, which was then on the rise with water described as swift and dangerous. While it is true that in *Spiller* the plaintiff's decedent was actually in the boat at the time of the disaster, *Senko* makes clear that this fact is not determinative. *Senko v. LaCrosse Dredging Co.,* 352 U.S. at 373, 77 S.Ct. at 417.

Reversed and remanded for proceedings consistent with this opinion.