Roger Dale SMITH, Plaintiff,

v.

ODOM OFFSHORE SURVEYS, INC., Defendant/Third-Party Plaintiff,

and

AETNA CASUALTY AND SURETY CO., Defendant-Appellee,

v.

ALVAREZ–DONNAWAY–PASSONS, INC., Third-Party Defendant,

and

National Union Fire Insurance Co., Third-Party Defendant/Appellant.

No. 85–3148.

United States Court of Appeals, Fifth Circuit.

June 11, 1986.
Rehearing Denied July 28, 1986.

Donald A. Hoffman, David F. Bienvenu, Gerolyn P. Roussel, New Orleans, La., for third-party defendant/appellant.

Robert C. Funderburk, Jr., Arthur H. Andrews, Baton Rouge, La., for defendant-appellee.

John Wm. Black, Brownsville, Tex., for amicus curiae Dianne Craig.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The crucial issue in this case is the status of Roger Dale Smith, the original plaintiff, when he was employed by Odom Offshore Surveys, Inc. (Odom). If Smith was "scientific personnel" aboard an "oceanographic research vessel" (ORV), he is precluded from recovering as a seaman under the Jones Act.[1] If Smith was not "scientific personnel" aboard an ORV, then we must determine whether he was a "seaman" entitled to the remedies provided by the Jones Act. We hold that Smith was a seaman at the time of his death.

For a number of years prior to April 1980, Smith worked in Odom's Offshore Division performing hydrographic surveys onboard a fleet of vessels leased by Odom and specially equipped for such purpose. In April of 1980, Smith requested and was permanently transferred to the Inland Waterways Division, which was responsible for surveys along inland waterways and rivers.

In the Inland Waterways Division, Smith was to be trained as a hydrographic party chief who would perform surveys and soundings of the Mississippi River. As party chief, Smith was to be assigned to the OLIVIER I, a vessel leased by Odom. Smith's work would have been performed

1. The Oceanographic Research Vessels Act provides that "[s]cientific personnel on an oceanographic research vessel shall not be considered seamen under the provisions of title 53 of the Revised Statutes and [Acts] amendatory thereof or supplementary thereto." 46 U.S.C. § 444. The Jones Act amends or supplements title 53 and, thus, prevents "scientific personnel" aboard ORVs from being considered seaman under the Jones Act. *See Presley v. Vessel CARRIBEAN SEAL,* 709 F.2d 406, 409 (5th Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *Sennett v. Shell Oil Co.,* 325 F.Supp. 1, 6 (E.D.La.1971).

primarily aboard the vessel, except for periodic checks of the "benchline."

At the time of Smith's transfer, the Inland Waterways Division was preparing to perform a contract with the Army Corps of Engineers. This contract required Odom to check revetments [2] for faults and to take soundings to determine if the banks of the Mississippi River were eroding. Because the OLIVIER I was not yet fully outfitted, Smith was temporarily assigned to a shore party.[3] The work of the shore party enabled other hydrographic crews, whose vessels were complete, to begin surveying. About 20 Odom employees were assigned to this particular job.

On May 30, 1980, the date of the accident, the shore party met at the job site and used the M/V GOOSE for transportation to various sites on the banks of the river. Smith was using a chain saw to clear an area so that onshore markers could be seen from the river. He suffered ultimately fatal injuries when a willow tree which he was cutting down struck him on the head.

Named as defendants in this action on behalf of Smith's decedents were Odom and Aetna Casualty and Surety Company (Aetna), Odom's carrier for longshoremen and harbor workers' coverage and state workers' compensation insurance. Odom filed a third-party complaint against its insurance agent, Alvarez-Donnaway-Passons, Inc., and its agent's errors and omissions carrier, National Union Fire Insurance Company (National Union).

The parties reached a settlement prior to trial, and the defendants reserved the right to litigate among themselves whether Smith was a Jones Act seaman at the time of his injury. Under the settlement agreement, if Smith was a longshoreman, Aetna would pay its policy limits. If Smith was a Jones Act seaman, National Union would be liable. The case was submitted to the district court on the record.

The district court, 588 F.Supp. 1168, found that Smith was a Jones Act seaman when he was fatally injured. The court rejected National Union's defense that Smith was "scientific personnel" aboard an ORV and, as such, precluded from recovery under the Jones Act. On appeal, National Union challenges both of these seminal conclusions of the district court.

## I

■ The district court found that the Oceanographic Research Vessels Act (ORVA), 46 U.S.C. §§ 441–445, was not applicable because there was no evidence that any of the vessels on which Smith had worked had been classified as ORVs pursuant to 46 C.F.R. § 3.10–1 (1986). National Union correctly notes that § 3.10–1 cannot apply because it did not become effective until December 16, 1981, more than a year after Smith's death. National Union further asserts that it was impossible for a vessel to be certified as an ORV prior to that date because there was no procedure by which the Coast Guard could make such a designation. Even assuming such a designation procedure existed, National Union argues that it was purely voluntary in nature and that Odom's failure to comply should not prevent it from seeking the protections of the ORVA.

The Act defines an ORV as

a vessel which the Secretary of the department in which the Coast Guard is operating *finds* is being employed exclusively in instruction in oceanography or limnology, or both, or exclusively in oceanographic research, including, but not limited to, such studies pertaining to the sea as seismic, gravity meter and magnetic exploration and other marine geophysical or geological surveys, atmospheric research, and biological research....

---

**2.** Revetments are concrete slabs placed on the bottom of the river in areas known to erode.

**3.** Before the hydrographic surveys could be performed from the river, it was necessary for Odom to locate and set markers onshore. This sometimes requires that trees which may obscure the markers be cut down. A "shore control party" sets the markers and works ahead of the hydrographic crews which follow along the river in boats.

46 U.S.C. § 441(1) (emphasis added).[4] Whether this statute required the specific designation of a vessel as an ORV by the Secretary of Transportation, or a designated Coast Guard official, prior to December 16, 1981, is an issue of first impression.[5] Although the district court erred in basing its opinion on 46 C.F.R. § 3.10–1 (1986), we affirm the judgment on other grounds. *See Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir.1985) ("This court is not restricted to the reason given by the district court ... if the judgment of the district court is correct").

The district court was correct in requiring the specific designation of a vessel as an ORV, for although § 3.10–1 was not effective until after the accident,[6] regulations applicable at the time compel this result. In 1980, 46 C.F.R. § 188.01–1(a)(1980), promulgated by the Secretary of Transportation and the Coast Guard, provided that the "purpose of the regulations ... is to set forth uniform minimum requirements for oceanographic vessels found by the Officer in Charge, Marine Inspection, or the Commandant, U.S. Coast Guard, to be 'oceanographic research vessels' as defined in [46 U.S.C. § 441]." Further, the United States Coast Guard Marine Safety Manual (CG–495) § 30–10–45A(1), at 30–10:19 (1978) provided that "[o]ceanographic research vessels shall be given an inspection for certification with such reinspections as are deemed necessary by the Commandant.... Classification as an oceanographic research vessel requires a finding as such by the Coast Guard."[7]

National Union argues that even if an inspection procedure was available, it was purely voluntary in nature and Odom's failure to comply should not work to its detriment.[8] The classification requirements are voluntary in the sense that if a vessel which would otherwise qualify as an oceanographic research vessel does not seek the benefit of such status, it commits no legal infraction by having failed to obtain it. Where, however, as here, the owner or operator of such a vessel seeks to bring itself within the protective umbrella of the Act, a "finding" of such status by the Coast Guard is required. Odom's failure to obtain ORV designation for the vessels which it leased precludes it from asserting ORV status now.[9]

## II

Because the ORVA is not applicable, we turn to the question whether Smith was a

---

**4.** The Coast Guard is currently operating in the Department of Transportation, except when operating as a service in the Navy, pursuant to 49 U.S.C. § 108(a).

**5.** In *Craig v. M/V PEACOCK*, 760 F.2d 953, 955 & n.1 (9th Cir.1985), the parties assumed the applicability of the ORVA. In *Presley* and *Sennett*, this specific issue was not addressed. National Union also relies on two unpublished district court opinions, neither of which specifically addressed the issue. *See Castro v. Vessel LAFAYETTE*, No. 76–755 (S.D.Tex., March 2, 1978); *Trowell v. West. Geophysical Co. of Am.*, No. 75–1779 (S.D.Tex., April 13, 1977).

**6.** *See* 46 Fed.Reg. 56,200 (1981). As of December 16, 1981, the designation of a vessel as an ORV is obtained as follows:

> Upon written request by the owner, master, or agent of a vessel, a determination will be made by the Officer in Charge, Marine Inspection, of the zone in which the vessel is located, whether the vessel may be designated as an oceanographic research vessel under the provisions of 46 U.S.C. § 441.

46 C.F.R. § 3.10–1(a)(1986).

**7.** *See also* 33 C.F.R. §§ 3.40–15,–25 (1980), providing for Marine Inspection Offices in New Orleans, Louisiana, and Houston, Texas.

**8.** National Union's sole support for this assertion is a sentence in the Federal Register: "It should be noted, however, that the designation procedure is purely voluntary in nature and only needed where equitable relief from otherwise applicable vessel inspection or shipment and discharge requirements is desired." 46 Fed. Reg. 56,201 (1981).

**9.** In light of our holding that the statute mandates a "finding" of ORV status by the Secretary or a Coast Guard official, *see supra* note 4, we reject National Union's suggestion that prior to December 16, 1981, courts could examine the facts and independently determine whether a vessel was engaged solely in oceanographic research. Further, because none of the vessels on which Smith worked was certified as ORVs, we need not consider whether the vessels were in fact ORVs or whether Smith was "scientific personnel" aboard such vessels.

"seaman" under the Jones Act.[10]  The district court found that Smith was a seaman whose temporary assignment to the shore control party did not destroy that status. This finding of fact shall not be set aside unless clearly erroneous.  Fed.R.Civ.P. 52(a).  We will not consider a finding to be clearly erroneous unless, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518, 528 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746, 765–66 (1948).  Upon a review of the entire record, we cannot conclude that the district court's finding that Smith was a seaman is clearly erroneous.

The test for seaman status under the Jones Act is well-established in this Circuit. The worker claiming such status must establish (1) that he is assigned permanently to, or performs a substantial part of his work on, (2) a vessel in navigation and (3) that the capacity in which he is employed, or the duty which he performs, contributes to the function of the vessel or the accomplishment of its mission.  *See Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1072–73 (5th Cir.1986) (en banc); *Offshore Company v. Robison*, 266 F.2d 769, 779 (5th Cir.1959); *McKie v. Diamond Marine Co.*, 204 F.2d 132, 136 (5th Cir.1953).  National Union does not contest the district court's finding that Smith was a seaman while employed in the Offshore Division or that Smith would have been a seaman in his capacity as a hydrographic party chief aboard the OLIVIER I in the Inland Water-

ways Division.[11]  National Union asserts that the OLIVIER I was not a vessel in navigation at the time of the accident and, thus, that on the date of his fatal injury, Smith lacked a "permanent" connection to a vessel in navigation.

■ National Union's limited focus on the brief hiatus between two jobs that concededly entitled Smith to seaman status is fatal.  Once it is established that a worker is a seaman, "the Jones Act permits recovery even if he sues for injuries received while off ship and engaged in temporary work for his employer unrelated to service of the ship."  *Higginbotham v. Mobile Oil Corp.*, 545 F.2d 422, 432 (5th Cir.1977), *reversed on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).  *See Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 365 (5th Cir.1982); *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir.1980).  Neither the situs of the employee's work, nor the place of injury, is determinative in a Jones Act case.  A seaman does not lose his status because he is temporarily assigned by his employer to duties off his vessel.  *See Guidry*, 614 F.2d at 453.

■ The crucial inquiry in this case is whether Smith retained his status as a seaman on the date that he was injured. [H]ow long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors

---

**10.**  The Jones Act, 46 U.S.C. § 688(a), provides:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury ... and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

**11.**  In both the Offshore and Inland Waterways Divisions, it is uncontroverted that Smith performed and would perform a substantial part of his work on a vessel in navigation.  The nature of his duties in each instance would be an integral function contributing to the accomplishment of the vessels' missions.  *See, e.g., Barrett*, 781 F.2d at 1073 (a welder's helper contributed to the seagoing drilling platform's function of drilling for oil).  Thus, all three criteria of the seaman test are satisfied.

relevant to the ultimate inquiry: at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects?

*Id.* Here, the district court found that Smith's shore assignment was to be of fairly short duration, beginning in late May and ending in early June. Further, the assignment was directly related to Odom's business, as well as to Smith's seaman employment as a hydrographic surveyor, because the shore work had to be completed before surveying operations could begin from the vessel. The district court also found that Smith could not have refused the assignment if he wanted to assume his duties as a hydrographic party chief aboard the OLIVIER I. Such findings are not clearly erroneous.

Smith remained in Odom's employ during the entire time in question. *See Guidry,* 614 F.2d at 453. It is uncontroverted that Smith's assignment to the shore control party was temporary. On the date of the injury, Smith had been with the shore control party for only four days and was expected to complete the assignment by early June, at which time the OLIVIER I would be outfitted and ready to begin surveying operations. *See Savoie,* 692 F.2d at 366. Furthermore, even Smith's temporary shore duty related to his seaman status as contemplated by his assignment to the Inland Waterway Division. Clearing obstructions between the shoremarkers and the river was necessary to his actual function as a hydrographic surveyor in the Inland Waterways Division. Based on his entire career with Odom before, during, and, had it been possible, after the minimal onshore assignment, Smith had a "sufficient nexus with the navigation of vessels and the perils attendant thereon to implicate the concerns of the Jones Act." *Bouvier v. Krenz,* 702 F.2d 89, 90 (5th Cir.1983). Thus, we conclude that the district court's finding that Smith's temporary land-based assignment did not destroy his seaman status was not clearly erroneous.

The judgment of the district court is AFFIRMED.