**Michael Ray BROWN, Plaintiff,**

v.

**McKINNON BRIDGE COMPANY, INC., et al., Defendants.**

**No. CIV–3–88–0367.**

United States District Court, E.D. Tennessee, N.D.

Sept. 6, 1989.

*See Shore, supra*, at 1159.

---

**3.** Further, the Court is not convinced that no remnant hostility exists between these parties.

1480

James S. Thompson and Conrad Finnell, Cleveland, for plaintiff.

G. Ray Batton, Farris, Hancock, Gilman, Branan & Hellen, Memphis, R. Franklin Norton, Norton & Luhn, Phillip P. Durand and Stephen W. Gibson, Ambrose, Wilson, Grimm & Durand, Knoxville, for defendants.

MEMORANDUM OPINION

JORDAN, District Judge.

This is an action by the plaintiff Michael R. Brown to recover for serious injuries he sustained while working for the defendant McKinnon Bridge Company, Inc. (McKinnon Bridge) during the construction of a bridge across the Tennessee river in Knox County, Tennessee. The plaintiff brought claims under the Jones Act, 46 U.S.C. § 688 *et seq.*, the Longshoresmen and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.* (LHWCA), as well as the general maritime law against McKinnon Bridge and under the Tennessee Products Liability Act, T.C.A. §§ 29–28–101, *et seq.*, against the defendant Vimco, Inc. (Vimco), a Pennsylvania corporation, which manu-

factured the bolts and ties used to secure forms for pouring concrete bridge piers. [Doc. 1.] Both defendants have filed cross-claims for indemnity or contribution. [Docs. 7 and 8.] In addition, McKinnon Bridge's motion to assert a pendent counterclaim against the plaintiff to determine his workers' compensation benefits under Tennessee law [Docs. 20, 20A] has been granted by this Court. [Doc. 43.][1] Trial of this action is currently set for Monday, October 16, 1989.

Presently, several dispositive motions are pending before the Court. McKinnon Bridge has filed a motion for summary judgment on Vimco's crossclaim. [Docs. 19, 19A.][2] McKinnon Bridge has also filed a motion to dismiss the plaintiff's claim under the LHWCA for lack of subject-matter jurisdiction. [Docs. 26, 26A, 53.] The plaintiff has filed his response, conceding that the Court does not have jurisdiction pursuant to the provisions of 33 U.S.C. § 919 because he did not first pursue an administrative claim; however, he continues to assert an original claim under § 905(b) of the LHWCA. [Docs. 32, 32A.] As part of his motion to withdraw his answer and to dismiss McKinnon Bridge's workers' compensation counterclaim [Docs. 33, 33A], the plaintiff states that should this Court determine that he is not a seaman under the Jones Act, he anticipates filing an administrative claim under the LHWCA. In regard to the claims under the Jones Act and general maritime law, cross-motions for partial summary judgment have been filed by the plaintiff [Docs. 29, 30, 31, 36, and 54] and McKinnon [Docs. 39, 39A, and 55]. The Court now addresses all dispositive motions except McKinnon Bridge's motion for summary judgment on Vimco's crossclaim and the plaintiff's motion to withdraw his answer and to dismiss McKinnon Bridge's counterclaim.

## I. Facts

The material facts are essentially undisputed. The plaintiff was severely injured in the course and scope of his employment on July 22, 1987, when the forms used to pour concrete for a web wall on a bridge pier collapsed on top of him. The plaintiff first started working periodically for McKinnon Bridge in the early 1970's and was hired as a laborer on various projects; he eventually became classified as a carpenter. [Brown deposition, at p. 16, lines 22–25 through p. 18, lines 1–22.] When McKinnon Bridge constructs a bridge across a body of water, it apparently maintains two crews that may be referred to as a land crew and a water crew. [*Id.*, at p. 22, lines 5–15.] The water crew worked on piers in the water. [*Id.*, at p. 23, lines 23–25 through p. 24, lines 1–12.]

At the time of the accident, the plaintiff had been working on one of the piers in the water. [*Id.*, at p. 25, lines 7–14.] The pier was constructed within a cofferdam placed around the site of the pier from which the water was pumped to create a dry hole in the river. [*Id.*, at p. 42, lines 20–25 through p. 43, lines 1–3.] While the cofferdam was being put in place and the site prepared for construction, which took two-to-three weeks to complete, workers would construct the metal forms for pouring the concrete pier. Much of this work was done on barges in the river. [Gary Dick deposition, at p. 9, lines 16–22; James Beecham deposition, at p. 15, lines 5–14; Darrel J. Rogers deposition, at p. 7, lines 24–25 through p. 8, lines 1–5, 18–23; affidavit of Michael R. Brown.] The barges were anchored by various means and were used as construction platforms. [Brown deposition, at p. 34, lines 2–25 through p. 39, lines 1–15.]

Once the cofferdam was in place and sealed, laborers descended into the interior to construct the forms for pouring the pier. They had to ascend routinely to the barges for supplies and materials. [*Id.*, at p. 43, lines 4–25 through p. 45, lines 1–3; Rogers deposition, at p. 8, lines 15–18 and at p. 10,

---

1. The plaintiff has filed an answer to the counterclaim [Doc. 25] and subsequently filed a motion to withdraw his answer and to dismiss McKinnon Bridge's counterclaim [Docs. 33, 33A]. McKinnon Bridge has filed a reply to the plaintiff's motion [Doc. 52].

2. Vimco filed a response to this motion [Docs. 44, 51]. The plaintiff has also filed a response to this motion [Doc. 36].

lines 10–21.] The forms were bolted together, secured by cables, and then concrete was poured into them in progressive stages over the course of a day. [Brown deposition, at p. 45, lines 3–25 through p. 46, lines 1–22; p. 50, lines 14–23.] On this particular project, a web wall or retaining wall was constructed around the pier to connect it with another pier. [*Id.*, at p. 52, lines 8–13.] The metal forms for the web wall were constructed in a similar manner as those for the piers. [*Id.*, at p. 57, lines 20–25 through p. 58, lines 1–5.] During the assembly of the forms for one of these web walls, the form collapsed and resulted in injuries to the plaintiff.[3]

In addition to the plaintiff's duties involving the construction of the cofferdam and working on the metal forms, he also vibrated air pockets out of the concrete as it was poured [*Id.*, at p. 48, lines 22–25 through p. 50, lines 1–13], and flagged for the crane [*Id.*, at p. 47, lines 22–25 through p. 48, lines 1–16]. The plaintiff was a member of the water crew at the time of the accident. [Affidavit of Michael R. Brown; Brown deposition, at p. 22, lines 18–24.] The plaintiff's duties sometimes required him to clean the barges and equipment on the barges, to assist in tying up the barges, to handle lines, to help to anchor the barges with spuds, and to tie the barges off when moved. [Dick deposition, at p. 7, lines 10–25 through p. 8, lines 1–18; Rogers deposition, at p. 7, lines 19–23.] The workers were transported to the barges by a tug or other type of boat. [Dick deposition, at p. 8, lines 19–22; Beecham deposition, at p. 14, lines 4–9.] The plaintiff would often eat the lunch he brought with him from home on a barge or on the tug boat. [Brown deposition, at p. 73, lines 12–18; Beecham deposition, at p. 14, lines 10–24.] He did not sleep on a barge, however, and went home every day. [Brown deposition, at p. 72, line 25 through p. 73, lines 1–5.] Although the tugs were equipped with living quarters, the barges had no crew quarters or kitchen facilities. [*Id.*, at p. 73, lines 6–11.] Nevertheless, a substantial portion of the plaintiff's work was per-

formed on several of the barges. [Affidavit of Michael R. Brown.]

At the time of the accident, McKinnon Bridge maintained a fleet of four crane barges [Dick deposition, at p. 13, lines 19–24], two tug boats [*Id.*, at p. 13, line 25 through p. 14, line 1], and 12 flat barges [*Id.*, at p. 14, lines 2–5]. The workers were not confined to one barge and moved from barge to barge. [*Id.*, at p. 14, lines 6–11.] Some barges were moved in the river on an almost daily basis and navigational lights would be switched on at times. [*Id.*, at p. 14, lines 12–20; Rogers deposition, at p. 7, lines 15–23, at p. 10, lines 22–25 through p. 11, lines 1–7.] For members of the water crew to provide such assistance in the movement of the barges was not unusual. [Affidavit of Michael R. Brown.] Approximately six barges and two tow boats or tugs were utilized at the construction site but the plaintiff was not assigned to any one of these barges or boats and worked from different barges. [Affidavit of Michael R. Brown.] The barges were designed to be moveable in the water and were equipped with lifesaving devices. [*Id.*] They were transported by tug on the river system to various McKinnon Bridge construction sites. [*Id.*] No party disputes that the Tennessee river is a navigable waterway.

## II. Analysis

### A. *Jones Act Claim*

The Sixth Circuit has established a test to determine whether a person is a seaman within the meaning of the Jones Act. In *Luckett v. Continental Engineering Company*, 649 F.2d 441 (6th Cir.1981), the Court of Appeals restated its long-standing test to determined whether a person is a seaman:

1. The vessel on which the person was employed must be in navigation;

2. The claimant must have had a more or less permanent connection with the vessel; and

---

**3.** The products liability claim against Vimco concerns the issue of whether the ties and bolts used to fasten the forms were defective or un-

reasonably dangerous. This opinion does not address that issue.

3. The claimant must have been on board primarily to aid in navigation.

649 F.2d at 443. *See also Searcy v. E.T. Slider, Inc.*, 679 F.2d 614 (6th Cir.1982). The Sixth Circuit emphasized in *Luckett, supra,* that the Jones Act provides for a jury trial and "that the question of whether the [claimant] was a seaman within the meaning of the Jones Act is normally a question of fact to be decided by the jury where one is requested." *Id.* Moreover, the Jones Act, like other workers' compensation laws, is remedial legislation that is to be liberally construed. *Id.*, at 443–444. The Court addresses each interrelated prong of this test individually.

### 1. *Employment on a vessel in navigation*

In his affidavit, Mr. Brown stated that he was not assigned to any particular barge and worked from different barges; however, he was also a member of what was apparently known as the water crew. Authority exists for the proposition that a person may be an ordinary laborer who happens to work around water but has no relation to a vessel so as to implicate admiralty jurisdiction. *See, e.g., Watson v. Massman Construction Company*, 850 F.2d 219 (5th Cir.1988). *But see Bennett v. Perini Corp.*, 510 F.2d 114 (1st Cir.1975). No dispute exists in the present case that a barge is a vessel.

■ While not a Jones Act case, *Watson, supra,* involved similar facts to the present case and its rationale is applicable to the plaintiff's Jones Act claim because the Jones Act is "an integral part of the maritime law [and thus] rights fashioned by it are to be implemented by admiralty rules not inconsistent with the [Jones] Act." *Garrett v. Moore–McCormack*, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942). In *Watson,* a laborer was employed to work on piers for the Mississippi river bridge in New Orleans. As in the present case, employees worked from barges to construct the forms used to build piers. 850 F.2d at 220. The Court of Appeals carefully reviewed the basis for admiralty jurisdiction in tort actions, stating that jurisdiction exists where "either the injured party or the alleged tortfeasor is a traditional maritime actor, or at least if either of these parties is performing the same function in a traditional maritime activity." *Id.*, at 220–221. A maritime locality alone, without a significant relationship to maritime activity, will not sustain admiralty jurisdiction. *Id.*, at 221. The Court then considered four factors to decide whether such a significant relationship existed: (1) the functions and roles of the parties; (2) the vehicles and instrumentalities involved; (3) causation and the type of injury; and (4) the traditional role of admiralty law. *Id.*, at 222.

■ Like the deceased worker in *Watson,* the plaintiff in this case "fortuitously found himself employed on a construction site in the middle of the" Tennessee River. *Id.* Although he performed work on a barge, no barge was even indirectly involved in the cause of the injury. *Id.* Movement of a barge did not contribute to the injury and the accident did not occur as a result of his activities on the barges from which he worked. Nothing that would be a traditional maritime activity was involved. As the Fifth Circuit observed, the same accident could have occurred on land. *Id.*

In the case *sub judice,* the plaintiff was not assigned to any particular vessel. He went home to sleep every day, his duties primarily involved the same duties he would have performed on land and only incidentally and occasionally required any traditional maritime activities associated with the navigation of a vessel. At the time of the injury, he was not engaged in any such traditional maritime activity, such as anchoring a barge or tying a barge off to a tug. He was not injured during any activity traditionally associated with the vessels, their purpose, or their navigation.

In a Jones Act case in the Fifth Circuit, *Smith v. Odom Offshore Surveys, Inc.*, 791 F.2d 411 (5th Cir.1986), the court noted that the mere fact that a person otherwise permanently assigned to a vessel was not on the vessel at the time of his work would not preclude Jones Act coverage. *Id.*, at 415. Nevertheless, the court recognized that the claimant had to have "a 'sufficient nexus with the navigation of vessels and

the perils attendant thereon to implicate the concerns of the Jones Act.'" *Id.*, at 416 (citation omitted). The Court cannot come to any other conclusion but that the plaintiff was not employed on a vessel in navigation at the time of his injury.

As the Seventh Circuit recognized in *Johnson v. John F. Beasley Construction Company*, 742 F.2d 1054 (7th Cir. 1984), another case involving a river bridge worker, the central purpose of the Jones Act is "to provide protection for those subjected to risks associated with the transportation function of vessels on navigable waters." *Id.*, at 1061–1062. Moreover, incidental duties that might otherwise be seaman's functions do not transform a person into a seaman if those duties are not performed to assist in the navigation of the vessel. *Id.*, at 1062.[4] The plaintiff, therefore, fails to meet the first prong of the test.

2. *Permanency of connection with the vessel*

The plaintiff's own admission is that he was not assigned to any particular barge. The Fifth Circuit has held that a person may be a member of a crew on several vessels and he need not necessarily be assigned to one particular vessel. *Bertrand v. International Mooring and Marine, Inc.*, 700 F.2d 240, 244–245 (5th Cir. 1983). Regardless, "'the relationship creating seaman status must be substantial in point of time and work, and not merely sporadic.'" *Id.*, at 246 (citation omitted). The more vessels a claimant works on, the more tenuous and transitory his connections. *Id.* A substantial portion of the claimant's work must be performed aboard a vessel "'with at least some degree of regularity and continuity.'" *Id.*, (citation omitted). Essentially, therefore, the Court "must consider all the circumstances of claimant's employment to determine the relation of the vessel-related activities to the claimant's total responsibilities," *id.*, at 247, and whether such vessel-related activi-

ty is performed with any degree of regularity or continuity, *id.*, at n. 12.

The plaintiff's work for McKinnon Bridge was not such that he could not work except in conjunction with one of the vessels. *Id.*, at 248. Rather, the plaintiff had done similar work both for this defendant and for other contractors on land. [Brown deposition, at p. 17, lines 2–25 through p. 21, lines 1–6.] The work he performed on the barges could have been done on land. Assembling concrete forms is not entailed in working on a barge and that such work was done on a barge was merely incidental and transitory. *Id.* The plaintiff's work did not aid the vessel's function as a vessel. In other words, what he did on the barge was not related to the function of the barge as a vessel and rather his tasks on the barge related primarily to the construction of the bridge, not to the purpose and operation of the vessel itself. *Id.* Although, this is a somewhat closer question than the resolution of the first prong of the test, the Court nevertheless concludes that the plaintiff had no permanent connection to the barges. *See also Fox v. Taylor Diving and Salvage Company*, 694 F.2d 1349, 1353 (5th Cir.1983); *Simko v. C & C Marine Maintenance Company*, 594 F.2d 960, 964 (3rd Cir.1979).

3. *Primary function of claimant in aid of navigation*

The primary duties of the plaintiff were wholly unrelated to the navigational function of the barges on which he worked. He was engaged in constructing piers for a river bridge and very little of his work actually contributed to the navigation of the barges. In *Searcy v. E.T. Slider, Inc.*, *supra*, the Sixth Circuit recognized that the aid of navigation prong of the test has been applied very broadly. 679 F.2d at 616. Nevertheless, the facts in *Searcy* are quite distinct from those in this case. *Id.*, at 616–617.

---

4. The Court does not mean to imply that the vessel must necessarily be moving or even that a seaman must be on the vessel at the time of the injury. Merely throwing or fastening lines from time-to-time does not, however, constitute employment on a vessel in navigation. *Johnson, supra*, at 1064. *Cf. Brunet v. Boh Brothers Construction Company*, 715 F.2d 196 (5th Cir. 1983).

Despite the expansive interpretation of the aid-of-navigation prong in this Circuit, the Court is of the opinion that so little of what the plaintiff did involved the function of the barge as a navigable vessel, he cannot be considered to have been on board the barges in aid of navigation. The maritime nexus is simply too tenuous, transitory, and incidental to support a finding that the plaintiff was on board the barges in aid of navigation. Regardless, even if the Court were to conclude that the plaintiff's duties were in aid of navigation, *cf. Stafford v. Perini Corp.*, 475 F.2d 507 (1st Cir.1973), the failure of the other two prongs of the test, especially the first, clearly excludes the plaintiff from coverage under the Jones Act.

## B. *Propriety of Summary Judgment on Jones Act Claim*

Ordinarily the issue of whether a plaintiff is a seaman under the Jones Act is a question for the jury; however, the Court is of the opinion that no material issue of fact exists and that no reasonable jury could conclude that the plaintiff was a seaman at the time of his injury. Summary judgment has been upheld in similar Jones Act cases. *See, e.g., Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 383–384 (5th Cir.1985); *Johnson v. John F. Beasley Construction Company*, 742 F.2d 1054, 1064 (7th Cir.1984). *Cf. Roberts v. Williams–McWilliams Company*, 648 F.2d 255, 261 (5th Cir.1981). The Court, therefore, finds that McKinnon Bridge's motion for partial summary judgment [Docs. 39, 39A] should be granted and the plaintiff's crossmotion for partial summary judgment [Docs. 29, 30, 31, 36, and 54] should be denied.[5]

## C. *Longshoresmen and Harbor Workers' Compensation Act Claim*

■ The plaintiff has conceded that this Court does not have jurisdiction over the LHWCA compensation claim pursuant to 33 U.S.C. § 919, which requires a prerequisite administrative determination before jurisdiction is conferred upon the district court under 33 U.S.C. § 921(d). Nevertheless, in the plaintiff's response [Docs. 32, 32A] to McKinnon Bridge's motion to dismiss the claim under the LHWCA [Docs. 26, 26A, and 53], he contends that he is entitled to pursue an original claim pursuant to 33 U.S.C. § 905(b) as a third-party action against the vessel. Section 905(b) provides that a person injured "by the negligence of a vessel ... may bring an action against such vessel as a third party...."

The plaintiff relies on *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), but the Court does not agree that *Pfeifer* addresses the issue. Mr. Brown was not engaged in any activity related to a vessel at the time of his injury, unlike the claimant in *Pfeifer*. The Court recognizes that persons in the plaintiff's position have been allowed to recover administrative claims under the LHWCA, *e.g., LeMelle v. B.F. Diamond Construction Company*, 674 F.2d 296, 298 (4th Cir.1982); however, the plaintiff has pointed to no case to allow recovery under § 905(b) absent some connection to a vessel. Thus, the Court concludes that not only is the plaintiff not within the class of persons protected by this provision of the LHWCA but his injury was not "caused by the negligence of a vessel," 33 U.S.C. § 905(b), because the injury he suffered was wholly unrelated to any negligent condition on a barge. As the First Circuit observed in *Murphy v. Woods Hole, Mar-*

---

**5.** The plaintiff has relied upon two unpublished cases, *Alessi v. Patton–Tully Transportation Company*, No. 86–2104–MA (W.D.Tenn., May 19, 1987, McRae, J.) and *Hutcherson v. McKinnon Bridge Company, Inc.*, No. 85–1182, 1987 WL 65061 (W.D.Tenn., May 27, 1987, Todd, J.), which the Court has considered. In *Alessi*, the claimant had a more substantial and permanent connection to the barges, which were apparently moved regularly with the assistance of laborers such as the claimant, and had duties related to the movement of the barges. *Hutcherson* involved an injury on a barge itself while the claimant was performing duties related to the function of the barge. In the plaintiff's case, however, the injury took place on the construction site, i.e. the pier, and not on a vessel, and the plaintiff was not performing any duties related to the purpose of navigation of a vessel. Sufficient factual differences exist between these two cases and the present case to justify the different outcomes.

tha's Vineyard and Nantucket Steamship Authority, 545 F.2d 235, 240 (1st Cir.1976), "[t]he owner of [a vessel] is liable only if the vessel itself was actually negligent...." Consequently, the Court must dismiss the plaintiff's claim under § 905(b) of the LHWCA. McKinnon Bridge's motion to dismiss this LHWCA claim [Docs. 26, 26A, and 53] should therefore be granted. Since the plaintiff has conceded that this Court has no jurisdiction over the administrative claim, this claim will be dismissed without prejudice.

D. *Claim under General Maritime Law*

■ The plaintiff has also asserted a claim under the general maritime law. The Sixth Circuit has stated that the "[i]nvocation of admiralty jurisdiction in cases involving maritime torts requires that the tort take place on navigable waters and that the tort arise in the course of traditional maritime activities." *Petersen v. Chesapeake & Ohio Railway Company,* 784 F.2d 732, 736 (6th Cir.1986). Where the tasks of the worker and the injury suffered are identical to those of workers who have never stepped aboard a vessel, "the litigation present[s] issues of tort law traditionally committed to local resolution and [do] not require development or application of uniform federal maritime law." *Id.* The Fifth Circuit in *Watson v. Massman Construction Company, supra,* recognizing the same principles of admiralty law, 850 F.2d at 220–221, held that the tort "must bear a significant relationship to maritime activity." *Id.,* at 221.

The same principles that preclude assertion of claims under the Jones Act or the LHWCA, which have been thoroughly discussed in this Opinion, apply equally to the plaintiff's claims under the general maritime law. The Court, therefore, concludes that because the circumstances surrounding the plaintiff's claim neither arose in the course of traditional maritime activities nor bear any significant relation to such activities, the plaintiff's claim under the general maritime law cannot survive McKinnon Bridge's motion for summary judgment.

On the undisputed facts before it, that the vessels did not pose an unreasonable risk of harm to the plaintiff is clear. The injury suffered by him and the tasks he performed are identical to those of laborers who work on land.

### III. Conclusion

Accordingly, the Court ORDERS: [6]

1. That McKinnon Bridge's motion for partial summary judgment [Docs. 39, 39A] is GRANTED;

2. That McKinnon Bridge's motion to dismiss [Docs. 26, 26A, and 53] the plaintiff's claim under the Longshoremen and Harbor Workers' Compensation Act, 46 U.S.C. § 905(b), is GRANTED;

3. That the plaintiff's motion for partial summary judgment [Docs. 29, 30, 31, 36, and 54] is DENIED and the plaintiff's claim under the Jones Act, 33 U.S.C. § 688, his original action under the Longshoremen and Harbor Workers' Compensation Act, 46 U.S.C. § 905(b), and his claims under general maritime law are, therefore, DISMISSED; and

4. The plaintiff's administrative claims under any other provisions of the Longshoremen and Harbor Workers' Compensation Act, 46 U.S.C. §§ 901, *et seq.,* are DISMISSED WITHOUT PREJUDICE.

**6.** Given the disposition of McKinnon Bridge's motion for summary judgment and the absence of the Court's reliance on the challenged decision, the Court DENIES McKinnon Bridge's motion to strike under L.R. 10.5 [Docs. 42, 42A] as moot.