

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-1994

# Reeves v. Mobile Dredging & Pumping Company

Precedential or Non-Precedential:

Docket 93-5553

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Reeves v. Mobile Dredging & Pumping Company" (1994). *1994 Decisions.* Paper 45.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/45

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 93-5553

———————

ALBERT C. REEVES;
DOLORES REEVES, his wife

vs.

MOBILE DREDGING & PUMPING COMPANY, INC.

Albert C. Reeves and
Dolores Reeves,

Appellants

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 93-cv-00776)

———————

Argued
April 12, 1994
Before:  BECKER, MANSMANN and SCIRICA, Circuit Judges.

(Filed   June 13, 1994)

———————

David T. Lewis, Esquire
George F. Kugler, Jr., Esquire (Argued)
Archer & Greiner
One Centennial Square
P.O. Box 3000
Haddonfield, NJ  08033

   COUNSEL FOR APPELLANTS

Mark F. Muller, Esquire (Argued)
Freehill, Hogan & Mahar
80 Pine Street
New York, New York  10005

   COUNSEL FOR APPELLEE

———————

OPINION OF THE COURT

MANSMANN, <u>Circuit</u> <u>Judge</u>.

On July 20, 1990, Albert C. Reeves was in the process of cleaning with a hose the cutter head on the dredging ship, the *Becky Beth*. Reeves was thrown off the dredge onto a blacktop ramp four to six feet below, suffering serious personal injuries. At that time, the *Becky Beth* was assigned to a non-navigable lake entirely within the Commonwealth of Pennsylvania.

Reeves filed suit in the United States District Court for the District of New Jersey against Mobile Dredging & Pumping Company, Inc., seeking relief under the Jones Act.[0] Although Jones Act coverage requires that accidents occur on navigable waters, Reeves argues that under the "Fleet Seaman Doctrine" a seaman does not lose his seaman status when he is temporarily assigned to another vessel on non-navigable waters; and thus, because he had been assigned to a job on navigable water by a previous employer, he is entitled to coverage.

We have yet to adopt the Fleet Seaman Doctrine, and we take this opportunity to do so now. Nonetheless, because Reeves' only assignment with Mobile was on the *Becky Beth*, which was on non-navigable waters, and because his employment with Mobile was totally unrelated to his employment at Great Lakes, we hold that the Fleet Seaman Doctrine does not afford him relief. We also take this opportunity to re-examine our test for seaman status and modify it to bring it in line with recent Supreme Court

---

[0] Reeves was joined in the suit by his wife Dolores Reeves, whose claims are derivative of her husband's.

3

precedent.  We will affirm the district court's grant of summary judgment to the employer/shipowner.

I.

Mobile Dredging & Pumping Company, Inc., owner of the *Becky Beth*, employed Reeves as a welder for a dredging project that was to be performed on Lake Towhee in Quakertown, Pennsylvania.  Reeves is a maritime dredge welder and has been a member of Local Marine Union 25, Operating Engineer's Marine Division, since 1956.  Apparently the union places its members in their various positions when it finds openings.

Prior to his employment with Mobile Dredging, Great Lakes Dredge & Dock Company employed Reeves on a vessel moored on the Staten Island Sound.  On January 2, 1990, Reeves was laid off temporarily.  Pursuant to the union contract, he had the right to return to his job when work again became available.  He was on first call with Great Lakes in late May of 1990 when the union asked him to go to work for Mobile Dredging on a temporary, two-week basis.  For reasons unique to his contract with the union, Reeves could not reject the offer without jeopardizing future employment opportunities with the union.[0]

At the conclusion of his two week tenure, Mobile asked Reeves to stay on to replace another employee who had become ill.

---

[0]    The union is Reeves' business agent.  As soon as he is laid off from one job he applies to the union for a new position. Under the union contract he is not permitted to solicit jobs on his own.

4

As a result, Reeves continued to work for Mobile Dredging as a deckhand for six more weeks.

The facts of the accident itself are not in dispute. Reeves was assigned the task of cleaning the dredge's cutter head which was full of mud and silt from the lake's bottom. Usually employees cleaned the cutter head with a 1-1/2 inch fire hose attached to a small deck pump. For some reason a deck pump was not available, so Reeves attached a 2-1/2 inch fire hose to a larger stationary pump. The large pump created an amount of pressure in the hose strong enough to throw Reeves off the dredge and onto a blacktop covered ramp approximately four to six feet below the dredge.

As a result of the injuries Reeves received from the fall, he filed a complaint in the United States District Court for the District of New Jersey.[0] The district court granted Mobile Dredge's motion for summary judgment, finding that the *Becky Beth* was on non-navigable waters thereby precluding Jones Act benefits.[0] We have jurisdiction pursuant to 28 U.S.C. §1291.

## II.

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right

---

[0] Reeves filed two separate workers' compensation actions, one through the Pennsylvania Workers Compensation Act, and the other pursuant to the Longshore and Harbor Workers Compensation Act. The second claim has been stayed during the pendency of this admiralty action.

[0] We discuss "navigable" waters in Part II.C., infra.

or remedy in cases of personal injury to
railway employees shall apply . . . .

Jones Act, 46 U.S.C. § 688.  In effect the Jones Act provides a
cause of action in negligence for "any seaman" injured "in the
course of his employment," the liability for which rests with the
employer.  Matute v. Lloyd Bermuda Lines, Ltd., 931 F.2d 231,
235-36 (3d Cir. 1991), cert. denied, 112 S.Ct. 329 (1991).

Establishment of seaman status is the threshold for a
Jones Act trial.  (The other elements, "injury" and "in the
course of employment," are typically easily satisfied.)  It has
been nearly 20 years since we examined our test set forth for the
establishment of seaman status.  We held that an employee
claiming seaman status must establish:

> "(a) that the ship be in navigation; (b) that
> there be a more or less permanent connection
> with the ship; and (c) that the worker be
> aboard primarily to aid in navigation."

Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36 (3d
Cir. 1975), (quoting M. Norris, The Law of Seaman § 668 at 301
(3d ed. 1970), cert. denied, 423 U.S. 1054 (1976)).  See also
Evans v. United States Arab Shipping Co., 4 F.3d 207, 214-15 (3d
Cir. 1993), cert. denied, 114 S.Ct. 1065 (1994).  We acknowledge
that our test is somewhat dated, and informed by more recent
Supreme Court precedent, we now set about to modify its course.[0]

---

[0] Other circuits have established different tests.  The
Firth Circuit maintains that:

> The worker claiming such status must
> establish (1) that he is assigned permanently
> to, or performs a substantial part of his
> work on, (2) a vessel in navigation and (3)

6

In a recent Supreme Court decision, the Court reexamined seaman status and abandoned the "member of the crew" and "aid in navigation" tests, setting forth a new standard solely in terms of the employee's connection to a vessel in navigation.[0] McDermott Int'l Inc. v. Wilander, 498 U.S. 337, ___ (1991). In McDermott the Court stated:

> The key to seaman status is employment-related connection to a vessel in navigation. We are not called upon here to define this connection in all details, but we hold that a necessary element of the connection is that a seaman perform the work of a vessel. In this regard, we believe the requirement that an

> that the capacity in which he is employed, or the duty which he performs, contributes to the function of the vessel or the accomplishment of its mission.

Smith v. Odom Offshore Surveys, Inc., 791 F.2d 411, 415 (5th Cir. 1986).

The Second Circuit holds that seaman status is met where the jury finds that:

> (1) the plaintiff contributed to the function of, or helped accomplish the mission of, a vessel; (2) the plaintiff's contribution was limited to a particular vessel or identifiable group of vessels; (3) the plaintiff's contribution was substantial in terms of its (a) duration or (b) nature; and (4) the course of the plaintiff's employment regularly exposed the plaintiff to the hazards of the sea.

Latsis v. Chandris, Inc., 62 USLW 2619, 1994 WL 96619 (2d Cir. 1994) (modifying test to comply with McDermott Int'l Inc. v. Wilander, 498 U.S. 337 (1991)).

[0] The "member of the crew" language first surfaced in The Osceola, 189 U.S. 158, 175 (1903), and then reappeared in the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901-950. See McDermott, 498 U.S. at ___. The "aid in navigation" test was a product of early federal case law. Id. at ___.

> employee's duties must "contribut[e] to the
> function of a vessel or to the accomplishment
> of its mission" captures well an important
> requirement of seaman status. It is not
> necessary that a seaman aid in navigation or
> contribute to the transportation of the
> vessel, but a seaman must be doing the ship's
> work.

Id. (quoting Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir. 1959)).

Therefore, in order to comply with McDermott, we must abandon the "aid in navigation" element of our test and replace it with the apropos language. Hence, for Reeves to establish himself as a seaman, he must demonstrate that at the time of his injury: (a) he maintained a more or less permanent connection on (b) a vessel in navigation; and (c) that his employment contributed to the function of the vessel or the accomplishment of its mission.

Here, the parties do not dispute that Reeves had an employment relationship with the defendant Mobile Dredging at the time of the accident; nor do they dispute that he was injured in the course of his employment. Further, the parties concur that his employment with Mobile Dredging was on a vessel in non-navigable water. The problem here with regard to his status as a seaman is whether Reeves' former employment with Great Lakes on navigable waters served to give him "seaman status" during his temporary assignment with Mobile Dredging on non-navigable waters, under the Fleet Seaman Doctrine. As constitutive of this inquiry, we will first examine the permanency and nature of Reeves' connection with the *Becky Beth*.

8

A.

There is seemingly an unresolved issue regarding whether the "permanent connection" requirement for seaman status has survived McDermott; however, because we find that Reeves would satisfy that requirement under either the pre- or post-McDermott analysis, we need not decide this issue.

The Fifth Circuit has maintained that the "permanent connection" requirement has survived McDermott. Bach v. Trident S.S. Co., 920 F.2d 322 (5th Cir. 1991), vacated and remanded, 111 S. Ct. 2253, reaff'd on remand, 947 F.2d 1290 (5th Cir. 1991), cert. denied, 112 S. Ct. 1996 (1992). We have acknowledged this position, but have failed to reach the issue. Evans v. United Arab Shipping Co., 4 F.3d 207, 214-15 (3d Cir. 1993), cert. denied, 114 S.Ct. 1065 (1994). The Supreme Court has held that it is a jury determination whether the injured worker was permanently attached to and employed by the vessel as a member of its crew. Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 372 (1957).

In Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 37 (3d Cir. 1975), cert. denied, 423 U.S. 1054 (1976), we stated: "There must be a more or less permanent connection or attachment between the vessel and the worker as opposed to a temporary relationship." In Mach v. Pennsylvania R.R. Co., 317 F.2d 761, 764 (3d Cir. 1963), we held: "The duration of service for and upon a vessel may determine whether shipboard work which is not normally performed by a ship's company makes the worker a

9

crewman, but lack of long continued attachment to the vessel cannot, as a matter of law, serve to deny seaman's status under the Jones Act to an employee who is injured while assigned to and performing normal crew service."  See Evans, 4 F.2d at 215 n.7.[0]

We begin with the uncontrovertible fact that Reeves was hired as a temporary employee of Mobile Dredging.  He was initially employed for a two week period and then asked to stay on to replace an ailing co-worker.  Rather than determine whether the "permanent connection" requirement survives McDermott, we hold that even applying a "permanent connection" analysis, the employer's request for Reeves to stay on indefinitely provides him the permanent status contemplated in Griffith and Mach.  In Griffith, the plaintiff's contact with the employer amounted to only 3-3/4 days out of the 74 days of his employment relationship with the defendant, which we found insufficient to maintain seaman status.  Reeves' employment with Mobile Dredging was on an

---

[0]    The Court of Appeals for the Fifth Circuit has held that the permanency factor is not a literal requirement.  Ardoin v. J. Ray McDermott & Co., 641 F.2d 277 (5th Cir. 1981).

> The question whether a claimant was
> "permanently" assigned to a vessel is, thus,
> "more frequently an analytical starting point
> than a self-executing formula."  The
> "permanency" requirement is, we think, best
> understood as indicating that in order to be
> deemed a "seaman" within the meaning of the
> Jones Act "a claimant [must] have more than a
> transitory connection" with a vessel or a
> specific group of vessels.

Id. at 281 (citations omitted).  Cf. Latsis v. Chandris, Inc., 1994 WL 96619 (2d Cir. 1994) (defining permanency as substantial in terms of duration and nature).

indefinite, every day basis.  This, we hold, gives him the permanent connection to the *Becky Beth* required under the pre-McDermott analysis; notwithstanding that, he would certainly satisfy the connection contemplated in McDermott.

McDermott does not speak of permanency; rather its discussion centered on the requirement that the employee contribute to the function of the vessel or assist in the accomplishment of its mission.  See Southwest Marine, Inc., v. Gizoni, 112 S.Ct. 486 (1991) (applying McDermott).  Reeves became a deckhand for the *Becky Beth* and at the time of the accident was in the process of cleaning the silt and mud from the dredge's cutter head, which we assume to be the equipment performing or assisting in performing the actual dredging of the bottom of the waterway upon which the vessel was working.  Thus, it is without doubt that Reeves was contributing to the function of the vessel and to the accomplishment of its mission; and therefore, assuming the non-existence of the permanency requirement, he satisfies the connection contemplated in McDermott.

### B.

A Jones Act claimant must also establish an employment relationship, either with the owner of the vessel or with some other employer who assigns the employee to a task creating the proper connection with a vessel.  Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980).[0]

---

[0]      There is no requirement that the employer be the owner or even the operator of the vessel.  Matute v. Lloyd Bermuda

11

The existence of the employment relationship is a question of fact, and the inquiry turns on the degree of control the alleged employer exerts over the employee. Matute, 931 F.2d at 236.[0]  Here it is without doubt that Reeves was an employee of Mobile Dredging. Although he was first given a temporary two-week assignment, the fact that Mobile Dredging asked him to stay on indefinitely to replace an ailing co-worker supports his claim of an employment relationship. Mobile Dredging does not dispute that Reeves was its employee.

Additionally, it is not sufficient that Reeves establish an employment relationship; as we stated above, he must also demonstrate that he contributed to the function of the *Becky Beth* or to the accomplishment of its mission. McDermott, 498 U.S. at ___.  As we so noted above, Reeves' task was cleaning the cutter head, and in this, he was contributing to the function of the vessel and assisting in the accomplishment of its mission.

C.

---

Lines, Ltd., 931 F.2d 231, 236 (3d Cir. 1991) (citing Volyrakis v. M/V Isabelle, 668 F.2d 863, 865 (5th Cir. 1982)), cert. denied, 1125 S.Ct. 329 (1991).  Independent contractors have been found to be liable under the Jones Act, and it is even possible for a seaman to have more than one Jones Act employer, Guidry, 614 F.2d at 452, although only one could be sued as the employer responsible for the negligent act. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 791 (1949).

[0] Some of the factors demonstrating control include payment, direction, supervision, and discretion to hire and fire. Matute, 931 F.2d at 236.  If a third party borrows an employee from a Jones Act employer, that third party may become a Jones Act employer if it assumes the requisite amount of control over the employee. Guidry, 614 F.2d at 452.

12

Although the requirement is not expressly stated in the statute, the Supreme Court has long required that the injury occur through the employee's relationship to a vessel on a navigable body of water.  Swanson v. Marra Bros., 328 U.S. 1, 6 (1946).  See also McDermott, 498 U.S. at ___.  A body of water is navigable for purposes of federal admiralty jurisdiction if it is one that, by itself or by uniting with other waterways, forms a continuous highway capable of sustaining interstate or foreign commerce.  The Daniel Ball, 77 U.S. 557, 563 (1870).

Here Lake Towhee is a man-made, landlocked lake entirely within the borders of the Commonwealth of Pennsylvania. There are no waterways connecting it to any other state. Therefore, the district court was correct in holding that an intrastate, landlocked lake, in particular Lake Towhee, is non-navigable for purposes of federal jurisdiction.

Reeves concedes that Lake Towhee is a non-navigable waterway, and thus the Jones Act is ostensibly unavailing. Reeves argues, nonetheless, that under the "Fleet Seaman Doctrine," a seaman does not lose his seaman status when his employer temporarily assigns him to another vessel on non-navigable waters.  Although he had not previously worked for Mobile Dredging and although it assigned him to a single, non-navigable vessel, he suggests that the "Fleet Seaman Doctrine" would apply here.  We have not had an occasion to examine this rule and therefore undertake this task now.

III.

The Fleet Seaman Doctrine is a product of the United States Court of Appeals for the Fifth Circuit by virtue of Braniff v. Jackson Ave.-Gretna Ferry, Inc., 280 F.2d 523 (5th Cir. 1960). Braniff was employed as a superintendent in charge of maintenance on several ferries operating in the port of New Orleans. At the time of the accident Braniff was in a work boat tied to the side of one of the employer's ferries, and while he was making repairs to the machinery of the ferry, the work boat capsized and Braniff drowned. Id. at 525.

Braniff was not employed on any particular ferry; rather he was responsible for all maintenance and repair work to the marine and shore equipment belonging to the company. It was common for him and members of his staff to meet each morning at the waterfront. He would usually board each of the ferries to determine whether any repair or maintenance work was necessary. There were times when Braniff assigned tasks to be completed by other members of the maintenance crew, and times where his personal attention was required on the job. Occasionally, the work would take Braniff to the company's shop on shore. And of course, Braniff did not maintain his quarters on board any of the ferries. He lived ashore and worked daily hours; however, he was on 24-hour notice in case of emergencies. Id. at 525-26.

The district court held that because Braniff was not a member of the crew of a particular vessel, he was not a seaman for purposes of the Jones Act; the court therefore granted summary judgment for the employer. Id. at 526. The court of appeals disagreed, holding that although it is usual for a person

14

to have Jones Act seaman status in relation to a particular vessel, there is nothing in the concept which limits it to a single ship. Braniff, 280 F.2d at 528 (expanding on its decision in Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959)). The court concluded that the elements of seaman status can be satisfied, in addition to the traditional way,[0] if the employee is assigned to several specific vessels or performs a substantial part of his work on several specific vessels. Id. (citing Robison, 266 F.2d at 779). "Of course, it must not be spasmodic and the relationship between the individual and the several identifiable ships must be substantial in point of time and work." Id. at 528. Braniff was found to qualify as a seaman.[0]

_____

[0]    In Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959) the court of appeals had held:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

Id. at 779. This test has been modified through the years. See DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1122-23 (1st Cir. 1992).

[0]    In another Fifth Circuit case, the court of appeals concluded in a similar fashion, expanding on Robison without citing Braniff:

15

Reeves relies on another fleet seaman case in support of his position: Higginbotham v. Mobil Oil Corp., 545 F.2d 422 (5th Cir. 1977), rev'd on other grounds, 436 U.S. 618 (1978). There a helicopter, used to ferry workmen to and from the offshore drilling sites, crashed into the Gulf of Mexico, and the estate of one of the passengers brought suit under, inter alia, the Jones Act. The district court found that the passenger, because he was employed on a fixed drilling platform and not a drilling barge, was, as a matter of law, not a seaman under the Jones Act. Id. at 432.

The court of appeals disagreed, finding that much of the evidence introduced at trial demonstrated that during the two years before his death, the passenger worked on submersible drilling rigs which were previously held to be Jones Act vessels. The evidence also showed that Mobil had temporarily assigned the

---

> We do not believe that Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959), restricts a seaman to a person assigned only to one vessel. Rather, a person can be assigned to a fleet of vessels and the question is sufficient to go to the jury as long as he was assigned permanently to these vessels or performed a substantial part of his work on these vessels and if the capacity in which he was employed or the duties which he performed contributed to the function of these vessels, or to the accomplishment of its mission, or to the operation or welfare of these vessels in terms of maintenance during its movement or during anchorage for its future trips.

Bazile v. Bisso Marine Co., Inc., 606 F.2d 101, 104 (5th Cir. 1979), cert. denied, 449 U.S. 829 (1980)(footnote omitted).

passenger to the fixed drilling platform as a replacement for a vacationing co-worker.  Id.

The court of appeals relied on the proposition that an employee may claim seaman status despite being stationed on several different vessels during the course of his employment. Id. (citing Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523, 528 (5th Cir. 1960)).  The court noted that once it is established that the injured party is a seaman, the Jones Act permits recovery even if the plaintiff sues for injuries received while off the ship and engaged in temporary work for the employer unrelated to the service of the ship.  Id. (Citing Braen v. Pfeifer Oil Transp. Co., 361 U.S. 129 (1959)).  Consequently, the Fifth Circuit held that the situs of work is not determinative in a Jones Act case; and thus, the passenger was a seaman despite his intermittent temporary assignments to the fixed platforms because he worked predominantly on the submersible drilling barges.  Id. at 433.  See Smith v. Odom Offshore Surveys Inc., 791 F.2d 411, 415 (5th Cir. 1986) ("Neither the situs of the employee's work, nor the place of injury, is determinative in a Jones Act case.  A seaman does not lose his status because he is temporarily assigned by his employer to duties off his vessel.")

In another Jones Act case addressing Higginbotham, the Fifth Circuit discussed the fact that once an employee is labeled a seaman, his status may be interrupted, either temporarily or permanently, depending upon the events that transpire; and notwithstanding his or his employer's intentions that he remain or again become a seaman.  Guidry v. South Louisiana Contractors

17

<u>Inc.</u>, 614 F.2d 447, 453 (5th Cir. 1980).  The critical inquiry is whether the injured party maintained his status as a seaman on the date of the injury.  See <u>Savoie v. Otto Candies, Inc.</u>, 692 F.2d 363, 365 (5th Cir. 1982); <u>Smith</u>, 791 F.2d at 415.

> The seaman in <u>Higginbotham</u> remained in the employment of the same employer throughout. It follows from this decision that a seaman's status does not cease at the moment he is required by his employer to work ashore. However, <u>Higginbotham</u> does not imply that a maritime worker assigned to work ashore for a very long period of time would continue indefinitely to be a seaman merely because it is contemplated that he will someday return to the vessel, nor that a seaman's status continues if he commences work for another employer.

<u>Guidry</u>, 614 F.2d at 453.  See also <u>Savoie</u>, 692 F.2d at 365–66.

Having discussed the development of the Fleet Seaman Doctrine and noting that such has not been the rule for the Third Circuit, we must now determine whether we will adopt the Fleet Seaman Doctrine as espoused in the Fifth Circuit.

IV.

The Fifth Circuit precedent is not at all a radical vein in maritime jurisprudence.  In fact, we view it as a consistent expansion of United States Supreme Court precedent. For example, in <u>Senko v. LaCrosse Dredging Corp.</u>, 352 U.S. 370 (1956), the plaintiff, a handyman, was hired to assist in the employer's dredging operations.  He was injured when a coal stove exploded while he was placing signal lanterns from the dredge into a shed on shore.  The Supreme Court held that occurrence of

18

the injury on land was not material, rather Jones Act coverage depended only on a finding that the injured party was "an employee of the vessel, engaged in the course of his employment" at the time of the injury.  Id. at 373 (quoting Swanson v. Marra Bros., Inc., 328 U.S. 1, 4 (1946), citing O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36 (1943)).

In Swanson the Supreme Court held that Jones Act jurisdiction does not depend on the place of injury, but on the nature of the seaman's service, his status as a member of the vessel, his relationship to the vessel and its operation in navigable waters.  Swanson, 328 U.S. at 4-5.  Similarly, in O'Donnell, the Court held that Jones Act recovery depends, not on the place of injury, but on the nature of the service and its relationship to the operation of the vessel in navigable waters. O'Donnell, 318 U.S. at 42-43.

As we stated above, traditionally a seaman's status is tied to a particular vessel, resulting in an employee losing his seaman status if he is assigned to a non-navigable vessel, even if within the employer's fleet.  The Fleet Seaman Doctrine in our view applies to an employee, one who is predominantly assigned by his employer to a navigable vessel, but who occasionally is assigned by that same employer to non-navigable vessels.  It would also apply to one who is assigned to a number of navigable vessels and spends some time on shore, as in Braniff.  The doctrine protects the employee from losing his status as a seaman when on temporary non-navigable assignments or when assignments to a number of vessels preclude attachment to one.  As the

19

Supreme Court has recognized, stripping seaman status from such an employee, or allowing that same employee to oscillate between seaman and non-seaman status, is not only elusive, but in the face of injury would be a travesty of justice.[0]

Nearly 60 years ago Justice Cardozo, in a case construing the meaning of the term "seaman" in the same statute that we examine here today, stated that a statute "must be read in the light of the mischief to be corrected and the end to be obtained."  Warner v. Goltra, 293 U.S. 155, 158 (1934) (holding that the master of a tugboat is a seaman within the meaning of the Merchant Marine Act of 1920 (the Jones Act)).  The Court stated that the policy of liberal construction announced at the statute's inception has been steadfastly maintained.  Id. at 156. In that vein, we have recently stated that because the Jones Act

---

[0]    Seaman status cannot maintain indefinitely where the employee is not connected to a navigable vessel.  In discussing the effect of an assignment to work ashore, the Court of Appeals for the Fifth Circuit has held:

> [H]ow long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors relevant to the ultimate inquiry:  at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects?

Guidry v. South Louisiana Contractors Inc., 614 F.2d 447, 453 (5th Cir. 1980).

20

creates new rights for seamen, it shall be liberally construed to accomplish its beneficial purposes.  Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 214 (3d Cir. 1993) (citing Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790 (1949)), cert. denied, 114 S.Ct. 1065 (1994).

In light of that liberal construction and the purposes to be served by the Jones Act, the Fleet Seaman Doctrine is a reasonable extension of the Senko, Swanson and O'Donnell trilogy.  Indeed, the cases from the Fifth Circuit establishing this rule of law have these cases as their genesis.  See Magnolia Towing Co. v. Pace, 378 F.2d 12, 13  (5th Cir. 1967); Braniff v. Jackson Ave.–Gretna Ferry, Inc., 280 F.2d 523, 528 (5th Cir. 1960) (citing Robison); Offshore Co. v. Robison, 266 F.2d 769, 776–79 (5th Cir. 1959).  See also Braen v. Pfeifer Oil Transp. Co., 361 U.S. 129, 132–33 (1959).  Therefore, we hold that the Fleet Seaman Doctrine shall be the rule of law in this circuit in analyzing Jones Act cases because we believe, as the Fifth Circuit has demonstrated, that the doctrine comports well with and flows logically from Supreme Court precedent.

V.

We must now determine whether the Fleet Seaman Doctrine as applied to Reeves, affords him any relief.  The key to the Fleet Seaman Doctrine is that the seaman maintain the employment relationship with the same employer.  The term "fleet" refers to the fleet of vessels owned by the employer, not the fleet of vessels on which the employee has worked.  See Bach v. Trident

21

<u>Steamship Co. Inc.</u>, 920 F.2d 322, 324 (5th Cir. 1991).  The twist here is that Reeves had maintained the status of a seaman with Great Lakes Dredge & Dock, but then was laid off prior to his injury.  Upon taking the new position with Mobile Dredging, Reeves lost his seaman status.

Reeves asserts that his maritime union assigned him to the job, and thus, he should not be deemed to have lost his seaman status upon his layoff from Great Lakes.  He had been a dredge welder for 33 years and a member of the maritime union since 1956.  His assignment to the *Becky Beth* at the time of his accident was merely temporary, and he had the right to return to his position with Great Lakes when work again became available, even if it meant leaving the job with Mobile Dredging.  Reeves submits that he had concurrent job assignments, similar to the employee in <u>Higginbotham</u> -- a permanent assignment on navigable waters and a temporary assignment on Lake Towhee.  His assignment, although not by his maritime employer, was through his maritime union, which Reeves argues should be viewed as standing in the shoes of an employer for purposes of the Fleet Seaman Doctrine.

We understand Reeves' argument to be threefold.  He is attempting to combine the status he enjoyed while working for Great Lakes with the status he maintained while working for Mobile Dredging, to associate himself with the navigable vessels comprising the Mobile Dredging fleet although he was assigned

22

only to the *Becky Beth*, and to combine the vessels from each employers' fleet into one single fleet.[0]

The facts of Senko, Swanson and O'Donnell demonstrate that the plaintiffs were contributing to the function of the vessel, which, in each case, was operating in navigable waters. Only one employer was involved. Similarly, the Fifth Circuit has held that a fleet is an "identifiable group of vessels acting together or under one control." Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir. 1986) (en banc). In Barrett the Fifth Circuit rejected the argument Reeves is making here, that a fleet of vessels is any group of vessels an employee happens to work aboard. The Fifth Circuit concluded that "[u]nless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated." Id.

---

[0] Reeves further argues that the district court assumed for purposes of the defendant's motion that the *Becky Beth* was to be used on navigable waters in the future and that Reeves' service to the vessel at the time of injury was in preparation for the ship's use in navigable waters. This argument stretches the navigable water requirement beyond its limits. The *Becky Beth* was on a non-navigable waterway preparing to continue operation on the non-navigable waterway. It is of no matter that it was used or will be used again in navigable waters. Because the Jones Act protects only seamen, the claimant must be a seaman at the time of the injury -- the fact that he was once a seaman and that he or his employer intends for him to become a seaman once again will not suffice to cloak with seaman status the employee who has stepped out of seaman status, regardless of how near or remote in time or place, saving, of course, the temporary assignment exception set forth in the Senko, Swanson, and O'Donnell. Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 453 (5th Cir. 1980).

23

Here, Reeves did not maintain a relationship with the same employer. He was first employed with Great Lakes Dredge and Dock and was subsequently laid off. The union then assigned him to a position with Mobile Dredging & Pumping. It is without doubt that Reeves was a seaman when working for Great Lakes —–the Staten Island Sound is certainly a navigable waterway. However, Great Lakes did not direct Reeves to begin working on the *Becky Beth*, nor did it have any authority over him once he began working there. Reeves' employment with Great Lakes was simply unrelated to his employment with Mobile Dredging. The fact that Reeves came from Great Lakes with seaman status is of no account to Mobile Dredging. Therefore, Reeves' attempt to link the status he enjoyed while working for Great Lakes with the status he maintained while working for Mobile Dredging must fail.

Similarly, Reeves' attempt to associate himself with the fleet of Mobile Dredging vessels on navigable waters must also fail because he was assigned only to the *Becky Beth*. He was never assigned to any other Mobile Dredging vessel nor given any other assignment that would connect him to the Mobile Dredging fleet.

We agree with the en banc opinion in Barrett, that a fleet is an identifiable group of vessels acting together or under one control. Although the idea of "one control" is not entirely definite and will often depend on the circumstances, the *Becky Beth* and the vessels belonging to Great Lakes were

24

certainly not part of the same fleet.[0]  The case law uniformly rejects the claim that "fleet" means any group of vessels an employee happens to work aboard.[0]  At a minimum, the ships must take their direction from one identifiable central authority to constitute a fleet.  Here, Great Lakes, because it was a

---

[0]    For example, in <u>Bertrand v. International Mooring & Marine Inc.</u>, 700 F.2d 240 (5th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1069 (1984), the court held that it would not allow employers to deny Jones Act coverage to seaman by arranging with third parties to supply its vessels and assign the work.  However, the court also stated:

> We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works. Instead, we have specifically held that in the context of the single vessel, the employer need not be the owner or operator of the vessel for Jones Act liability to attach. To require common ownership or control when seaman work on several vessels but not when they work on a single vessel is inconsistent with the liberal construction of the Jones Act that has characterized it from the beginning and is inconsistent with its purposes.

<u>Id.</u> at 245 (citations omitted).  <u>But see</u> <u>Buras v. Commercial Testing & Engineering Co.</u>, 736 F.2d 307, 311 (5th Cir. 1984) ("<u>Bertrand</u> must be read in light of the factual situation it involved.").

[0]    <u>See</u> <u>Ardleigh v. Schlumberger Ltd.</u>, 832 F.2d 933, 934 (5th Cir. 1987) (holding that employment on 30 unconnected vessels does not meet test for seaman status); <u>Lirette v. N.L. Sperry Sun, Inc.</u>, 831 F.2d 554, 555-56 (5th Cir. 1987) (denying seaman status to a worker who spent 75-80% of his time working on drilling rigs owned by 23 different companies) (<u>Langston v. Schlumberger Offshore Services, Inc.</u>, 809 F.2d 1192, 1194 (5th Cir. 1987) (working on 15 different vessels belonging to 10 different employers does not qualify one as a seaman); <u>Bach v. Trident Steamship Co., Inc.</u>, 920 F.2d 322, 324-26 (5th Cir. 1991) (seaman status denied a river pilot who worked on a large number of unconnected vessels).

different company and had no contractual or other similar relationship with Mobile Dredging, had no control over the *Becky Beth*. Thus, although Great Lakes had formerly employed Reeves, the *Becky Beth* was simply not part of its fleet.

In sum, we must reject Reeves' Jones Act claim because his only employment with Mobile Dredging was solely on the *Becky Beth*, which was on non-navigable waters, and because he was disassociated from the Great Lakes fleet of vessels at the time of his injury. Thus we conclude that the Fleet Seaman Doctrine does not save Reeves his Jones Act coverage.[0]

---

[0] We view our decision consistent with that of the Ninth Circuit in <u>Stanfield v. Shellmaker, Inc.</u>, 869 F.2d 521 (9th Cir. 1989). Stanfield was a dredge surveyor. He designed the dredge cuts, plotted the positions and calculated the daily production of the vessel upon which he worked. When he completed a job, he was laid off until he was rehired for a new job. At the time of his accident, Stanfield was working on the dredge ship, the *Traveler*, on a non-navigable waterway -- a landlocked artificial waterway lying entirely within the state of California. Similar to this case, the dredge was capable of being disassembled and transported over land. <u>Id.</u> at 522. Also similar to this case, both Stanfield and the *Traveler* had previously worked on navigable waters.

Stanfield argued that despite the vessel's operation in non-navigable waters, the Fleet Seaman Doctrine, as articulated by the Fifth Circuit, qualifies him as a seaman. However, the Ninth Circuit, assuming without deciding that the Fleet Seaman Doctrine applied, stated that the doctrine was devised to ease the requirement that a seaman be assigned permanently to a vessel. The court interpreted the Fleet Seaman Doctrine to presuppose a permanent assignment to a number of vessels on navigable water, not a single vessel on non-navigable waters. Thus, because Stanfield was permanently assigned to a vessel operating in non-navigable waters, the Fleet Seaman Doctrine was unavailing. The court found irrelevant the fact that Stanfield had worked on other navigable vessels and that the *Traveler* had traversed on navigable waters. <u>Id.</u> at 525.

26

## VI.

Therefore, although we take this opportunity to adopt for this circuit the Fleet Seaman Doctrine, because Reeves was not within the fleet of vessels owned by Great Lakes Dredge and Dock, his original employer, at the time of his injury, but rather was employed by Mobile Dredging on a single vessel on a non-navigable waterway, Jones Act coverage is not available to him. We will thus enter an order affirming the judgment of the district court.