OPINION OF THE COURT
ROTH, Circuit Judge:
This interlocutory appeal involves two questions: (1) whether we have jurisdiction of it, and (2) whether an individual is precluded from being a “seaman” for purposes of the Jones Act, 46 U.S.C.App. § 688, if his relationship with a barge/diving station in question is only 10 days in duration. On the first issue, we will deny appellee/third-party defendant, Breakwaters International, Inc.’s, motion to dismiss the appeal. We find that the pleadings and actions of the parties were sufficient to invoke admiralty jurisdiction for purposes of Fed.R.Civ.P. 9(h). We, therefore, have jurisdiction of this appeal of a non-final order under 28 U.S.C. § 1292(a)(3). On the second issue, the district court held that Layne Foulk, a freelance commercial diver, had insufficient durational connections to the barge to be considered a “seaman” covered by the Jones Act. Foulk v. Donjon Marine Co., Inc., 961 F.Supp. 692, 698 (D.N.J.1997). We do not agree and will reverse.
I. Facts
In April 1993, the Borough of Avalon, New Jersey, contracted with Breakwaters to erect an artificial reef off Avalon’s coast. Breakwaters contracted with Donjon to provide material, barges, tugs, and a floating crane barge. Breakwaters hired freelance divers, including Foulk, to perform some of the work. Construction began on July 10, 1993, under Breakwaters’ direction. Donjon’s crane barge, the Farrell 256, anchored 150 feet offshore, was used both to install the reef and as a dive station for the dive crew, consisting of Foulk and three other commercial divers who were to assist in the placement of the reef. As dive station, the barge held air compressors, a communications box, and other diving equipment. The dive crew were to sleep ashore and to report to the barge by motor launch each morning. Foulk was hired to work for 10 days, the duration of the project. On his first day of work, Foulk was injured when, while in the water, he was caught between a jetty and the clam-shell bucket operated by the barge crane. He suffered various fractures, a collapsed lung and an injured right shoulder.
On January 6, 1995, while on disability, Foulk and his wife, Marjorie, filed suit against Donjon and Breakwaters, sounding in negligence and general maritime law. The Foulks alleged both diversity and admiralty jurisdiction. On February 14, 1995, before any answer was filed, the Foulks amended their complaint to name only Donjon as defendant on claims of negligence and of the unseaworthiness of Donjon’s vessel. Jurisdiction was once again grounded in both diversity and admiralty. On March 10, 1995, Donjon filed both an answer and a third-party claim against Breakwaters for indemnity and contribution. On June 1, 1995, the Magistrate Judge granted Donjon’s oral motion to amend its third-party complaint to *255 make a claim against Breakwaters in favor of the Foulks, pursuant to Fed.R.Civ.P. 14(c). Breakwaters did not object to this amendment. The parties subsequently submitted a joint pre-trial order which stated -inter alia, that “jurisdiction of the Court arises under the Admiralty Law as modified by the Jones Act, 46 U.S.C.App. § 688.” Breakwaters sought partial summary judgment on its contention that Foulk was not a “seaman” under the Jones Act, 46 U.S.C.App. § 688. Donjon and Foulk cross-moved for partial summary judgment that Foulk was a Jones Act “seaman.” On April 9, 1997, the District Court granted Breakwaters’ motion and denied Donjon and Foulk’s motion to the contrary. Foulk v. Donjon. Marine Co., Inc., 961 F.Supp. 692, 698 (D.N.J.1997). Donjon and the Foulks filed notices of interlocutory appeal on April 21, 1997, and April 30, 1997, respectively. 28 U.S.C. § 1292(a)(3). On May 9, 1997, Breakwaters filed a motion to dismiss the appeal. For the reasons set forth below, we will deny Breakwaters motion to dismiss, and, considering the merits of the appeal, we will reverse the district court grant of partial summary judgment in favor of Breakwaters.
II. Jurisdiction
Before we reach the merits of this appeal, we must first resolve Breakwaters’ motion to dismiss it. Donjon asserts that the jurisdictional basis for its interlocutory appeal is 28 U.S.C. § 1292(a)(3)[1] which provides in part:
[T]he court of appeals shall have jurisdiction of appeals from:
(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
To use § 1292(a)(3) as a basis for appellate jurisdiction of an interlocutory order, such as a grant of partial summary judgment, a plaintiff must be asserting an admiralty or maritime claim within the meaning of Fed.R.Civ.P. 9(h). This Rule states as follows:
A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules H(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. . If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not____ The reference in [28 U.S.C. § 1292(a)(3) ] to admiralty cases shall be construed to mean admiralty and maritime cases within the meaning of this subdivision [Fed.R.Civ.P. 9](h).
(emphasis added).
In both its initial complaint against Breakwaters and Donjon and in its First Amended Complaint against only Donjon, Foulk asserted two bases for subject-matter jurisdiction: admiralty and diversity.[2] When a federal plaintiff makes a claim in admiralty or joins an admiralty claim with another claim, certain special procedures and rules apply: Rules 14(c), 38(e), 82, the Supplemental Rules for Certain Admiralty and Maritime Claims, and 28 U.S.C. § 1292(a)(3). Rule 9(h) helps clarify the applicability of these admiralty and maritime rules and procedures in a case where more than one basis for subject matter jurisdiction has been asserted. To assist the court and the parties in recognizing the presence of an admiralty claim in a *256 multielaim suit, Rule 9(h) provides that the complaint “may contain a statement identifying the claim as an admiralty or maritime claim____” See Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 73 (3d Cir. 1996).
Breakwaters grounds its motion to dismiss the appeal on the fact that, in asserting admiralty jurisdiction in both the original and the amended complaints, the Foulks do not specifically cite to Rule 9(h) and, as a consequence, do not “identify the pleading as an admiralty claim.” For this reason, Breakwaters contends that the Foulks did not invoke admiralty jurisdiction and cannot employ the procedures associated with it, including the use of 28 U.S.C. § 1292(a)(3), the jurisdictional basis for this appeal. As a result, Breakwaters asserts that section 1292(a)(3) is inapplicable and that this appeal must be dismissed for lack of jurisdiction.
The issue that we must resolve is how specific a party must be in identifying an admiralty claim in a complaint when that party is pleading alternative theories of subject matter jurisdiction. Generally, under the liberal notice pleading practices in federal civil cases, a claimant “does not have to set out in detail the facts upon which the claim for relief is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim.” 2 Moore’s Federal Practice, § 8.04[1] (Matthew Bender 3d ed.1988); see Hishon v. King & Spalding, 467 U.S. 69, 78-79, 104 S.Ct. 2229, 2235-36, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102-03, 2 L.Ed.2d 80 (1957) (pleading must contain only a short and plain statement sufficient to give notice); Fed.R.Civ.P. 8. Similarly, the claimant must include “a short and plain statement of the grounds upon which the court’s jurisdiction depends.” Fed.R.Civ.P. 8(a)(1). Plaintiffs complaints, see n. 2, both clearly stated two jurisdictional bases: diversity and admiralty.
There are, however, embellishments to the Rule 8 notice pleading provisions. One of these is Fed.R.Civ.P. 9(h) which explains that a party in Foulk’s position, who has set forth two jurisdictional bases, “may” include a “statement identifying the claim as an admiralty or maritime claim.” (emphasis added). By affirmatively including such a statement, a party clearly describes a claim as being one in admiralty. See Advisory Committee Notes, Fed.R.Civ.P. 9, 1966 Amendment (“the preferable solution [for designating a claim as an admiralty claim] is to allow the pleader who now has power to determine procedural consequences by filing a suit in admiralty to exercise that power under unification ... by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim.”); cf. Fedorczyk, 82 F.3d at 73 (stating that “[t]o invoke admiralty jurisdiction ... a plaintiff must affirmatively insert a statement in the pleadings identifying the claim as an ‘admiralty or maritime claim’.”).
A direct citation to Rule 9(h) is unambiguous and may be considered by some to be preferable. See 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1211 (West 1990); Fed.R.Civ.P. Forms 2(d).[3] However, nothing in Rule 9(h) restricts the invocation of admiralty jurisdiction to a specific citation to that rule. Indeed, Rule 9(h)’s use of the word “may,” instead of “must,” suggests that the specific use of the words “Rule 9(h)” is not required.
We conclude then that a plaintiff, invoking admiralty jurisdiction, does not need to make direct reference to Rule 9(h). The question remains, however, just how specific a reference to admiralty jurisdiction must be in order to invoke it. Our review of the facts of the present case convinces us that the pleadings, along with the parties’ actions, are sufficient to invoke it.
*257 Shortly after defendant/third-party plaintiff Donjonffled its third-party complaint against Breakwaters for indemnity and contribution, the magistrate judge granted Donjon’s oral motion to amend its third-party complaint to reflect that it was seeking a claim for judgment against Breakwaters in favor of plaintiffs pursuant to Fed.R.Civ.P. 14(c). See Order Amending Third Party-Complaint, June 1, 1995. A third party claim under Fed.R.Civ.P. 14(c) can only be made with respect to admiralty claims as conternplated under Rule 9(h). See Fed.R.Civ.P. 14(c) (“When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third party plaintiff, may bring in a third party defendant who may be ... liable ... by way of remedy over, contribution or otherwise on account of the same transaction.... ”); Teal v. Eagle Fleet, Inc., 933 F.2d 341, 344 n. 1 (5th Cir.1991) (“Third party claims under Rule 14(c) are only available in admiralty or maritime claims.”). Donjon’s Rule 14(e) claim, then, made it clear to all parties that, this case would proceed, in part at least, as an admiralty claim.[4]
Furthermore, the parties’ manifestation of intent to proceed under admiralty jurisdiction was confirmed by the final pre-trial order, entered with the consent of Breakwaters, which stated that admiralty alone was the basis for jurisdiction. See Joint Final Pre-Trial Order (“The jurisdiction of the Court arises under Admiralty Law as modified by the Jones Act, 46 U.S.C.App. Section 688.”); see also Fedorczyk, 82 F.3d at 73 (holding that the district court did not have admiralty jurisdiction and noting that the district court had entered a pretrial order, stating that the “jurisdictional predicate” was diversity of citizenship, without objection from any party (including appellant' Fedorczyk who was arguing in favor of admiralty jurisdiction)). Having concluded that the parties’ pleadings and actions were sufficient to invoke admiralty jurisdiction, we have jurisdiction to hear Foulks’ and Donjon’s interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3).
III. Seaman Status
Turning to the merits of the appeal, Foulk and Donjon argue that the District Court erred in granting partial summary judgment on the issue of Layne Foulk’s seaman status under the Jones Act. The Jones Act provides a cause of action in negligence for “any seaman” injured “in the course.of his employment.” 46 U.S.C.App. § 688. There are two components to “seaman” status. See McDermott Int'l Inc., v. Wilander, 498 U.S. 337, 346-48, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991); Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). First, the “employee’s duties” must, “contribute] to the funetion[ing] of the vessel or to the accomplishment of its mission.” Chandris, 515 U.S. at 368, 115 S.Ct. at 2190. Second, the worker’s “connection to the vessel in navigation” must be “substantial in terms of both its duration and its nature.” Id. The district court found that while the first requirement was met, as a matter of law, the second requirement could not be met and thus granted partial summary judgment to Breakwaters. Foulk, 961 F.Supp. at 698. The district court reasoned that Foulk’s 10-day assignment was temporary and, therefore, not of sufficient duration to satisfy the Chandris “substantial duration” requirement. Id. (“Ten days (excluding nights), with no view towards a more permanent relationship, is simply too short a duration to satisfy the Chandris durational requirement for seaman status.”). We review the district court grant *258 of summary judgment[5] de novo. See Sempier v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir.1995).
The Jones Act fails to define the term “seaman.” 46 U.S.C.App. § 688. In 1927, Congress provided some content to the Jones Act seaman requirement by passing the Longshore and Harbor Workers’ Compensation Act (LHWCA). 33 U.S.C. §§ 901-950. The LHWCA provides the exclusive remedy for land-based maritime workers and excludes from its purview “a master or member of a crew of any vessel.” 33 U.S.C. § 902(3)(G). The Jones Act and LHWCA are mutually exclusive. ’ Because eligibility under the LHWCA precludes eligibility under the Jones Act, “master or member of a crew” must be seen as a refinement of the term “seaman” in the Jones Act. Harbor Tug and Barge Co. v. Papai, 520 U.S. 548,-, 117 S.Ct. 1535, 1538, 137 L.Ed.2d 800 (1997); McDermott Int’l Inc., v. Wilander, 498 U.S. 337, 346-48, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991).
More recently, the Supreme Court has provided a framework from which to analyze “seaman” status for purposes of the Jones Act, providing two essential requirements. See McDermott Int’l, 498 U.S. at 346-48, 111 S.Ct. at 813; Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). First, the worker’s duty must be to contribute to the functioning of the vessel, and second, the worker’s connection to the vessel must be “substantial in terms of both its duration and nature.” Chandris, 515 U.S. at 368, 115 S.Ct. at 2190. The Court explained that the purpose of the “seaman” requirement is to “separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation,” reserving seaman status for those who are regularly exposed to the perils of the sea. Id. The Court made clear that the “total circumstances of an individual’s employment must be weighed to determine whether he had a sufficient relation to the ... vessels.” Id.
Furthermore, the issue of seaman status is a mixed question of fact and law. Id. Once the court defines the appropriate standard, the trier of fact must decide whether a particular employee meets that standard and is thus a seaman. Id.; Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36-37 (3d Cir.1975). “Nevertheless,’summary judgment ... is mandated where the facts and the law will reasonably support only one conclusion.” Harbor Tug, 520 U.S. at-, 117 S.Ct. at 1540. The District Court granted Breakwaters’ motion for partial summary judgment on seaman status, reasoning that the facts and the law support only the conclusion that Foulk was not a seaman. We do not agree.
There is no question that Foulk met the first requirement—he contributed to the functioning of the vessel and to the accomplishment of its mission. As the district court found, the mission of the vessel in question, the Farrell 256, was the installation of an artificial reef. Foulk, 961 F.Supp. at 696. Foulk was employed as a diver whose duty it was to aid in the installation of the reef. See Wilander, 498 U.S. at 355, 111 S.Ct. at 817 (“It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship’s work.”).
There is also no question that Foulk met the 'first part of the second requirement—his connection to the vessel was substantial in nature. As the district court found, Foulk and the dive crew were necessary for the successful completion of the *259 Farrell 256’s project—the construction of the artificial reef; Foulk, 961 F.Supp. at 697. Furthermore, the profession of commercial diving is maritime in nature as it cannot be done on land. Wallace v. Oceaneering Int'l 727 F.2d 427-36 (5th Cir.1984). Commercial divers are regularly exposed to the perils of the sea, the protection from which was the purpose of the Jones Act seaman requirement. Chandris, 515 U.S. at 368-70, 115 S.Ct. at 2190.
There is a question, however, whether. Foulk met the second part of the second requirement—that Foulk’s connection to the Farrell 256 was substantial in duration. Foulk had worked alongside the Farrell 256 on the Avalon reef project for only half a day when he was injured. Nevertheless, under the “no snapshot” doctrine, articulated in Chandris, a-court does not evaluate a worker’s connection to a vessel or fleet at the moment of injury. Instead, the court must consider his intended relationship, as if he had completed his mission uninjured. 515 U.S. at 362-64, 370-74, 115 S.Ct. at 2187, 2191-92. The contemplated arrangement between Foulk and the Farrell 256 was for 10 days’ work. Thus, under the “no snapshot” doctrine, 10 days, not a few hours, is the appropriate durational measure.
The question then is whether Foulk qualifies as a Jones Act “seaman” when his durational connection to the Farrell 256 was only 10 days, i.e., whether 10 days is sufficient for “substantial duration.” The district court found that, as a matter of law, a 10 day relationship was too short to satisfy the Chandris durational requirement. Foulk, 961 F.Supp. at 698.[6]
We conclude that the durational element cannot be answered by an absolute measure. It is the temporal element and the nature of the activities performed that, taken together, determine seaman status. Chandris, 515 U.S. at 368-72, 115 S.Ct. at 2190-91. While the Supreme Court did adopt “the centerpiece of the formulation used by the Court of Appeals” in that ease (the two-part test), and did find it “important that a seaman’s connection to a vessel ... be substantial in both respects (duration and nature),” id. at 371, 115 S.Ct. at 2191, the Court specifically rejected “the temptation to create detailed tests to effectuate the, congressional purpose, tests that tend to become ends in and of themselves.” Id. at 369, 115 S.Ct. at 2190. To define substantial duration by an absolute number would be to-create such a test. The ultimate inquiry is “whether the worker in question is a member of the vessel’s crew or simply a land-based employee who happens to be working on the vessel at a given time,” id. at 370, 115 S.Ct. at 2191, and the two-part test is merely an aid in making that determination. So while the Court did explain that both the duration and the nature of the connections be “substantial,” id., the inquiry is one in the totality of circumstances. Id. at 368-70, 115 S.Ct. at 2190. It is inappropriate to attempt to determine the minimum durational element by an absolute number, such as 10 days.
Furthermore, this reasoning is consistent with this court’s holding that “lack of longcontinued[durational] attachment to a vessel cannot, as a matter of law, serve to deny [Jones Act] seaman status to an employee who is injured while assigned to and performing normal crew service.” Reeves v. Mobile Dredging & Pumping Co. Inc., 26 F.3d 1247, 1252 (3d Cir.1994) citing with approval Latsis v. Chandris, Inc., 20 F.3d 45 (2d Cir.1994) aff'd 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314. Although pve-Chandris, this court in Reeves was cognizant of the “permanence” requirement that required a worker’s assignment to be substantial in duration, the holding eventually reached by the Supreme Court in Chandris. Our holding in Reeves that the lack of long attachment to a vessel cannot deny seaman status as a matter of law remains effective postChandris. Here, Foulk was clearly perform *260 ing the “normal crew service” of the Farrell 256—installation of the artificial reef. The fact that he was only going to do it for 10 days does not, by itself, mandate summary judgment. Ten days is not a “clearly inadequate temporal connection to vessels in navigation, sufficient to take the question from the jury by granting summary judgment.” See, e.g. Palmer v. Fayard Moving and Transportation Corp., 930 F.2d 437 (5th Cir.1991). A jury could reasonably find that an employee’s connections to a vessel are substantial in both duration and nature even if the duration contemplated is 10 days. The analysis of seaman status, and ultimately of whether an employee’s connections are substantial in duration and nature, may include a multiplicity of factors. See, e.g., Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983) cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). The contemplated number of days of employment is only one of these factors.
Consequently, we will reverse the trial court’s grant of summary judgment on seaman status and remand the case to the district court for further proceedings consistent with this opinion.[7]

. Donjon concedes that 28 U.S.C. § 1291 is inapplicable as a basis for jurisdiction because there was no "final judgment" of the district court. Appellant Donjon's Br. in Opp. to Appellee Breakwater's Mot. to Dismiss, at 11; See United States v. Brook Contracting Corp., 759 F.2d 320 (3d Cir.1985).

. The First Complaint states:
The jurisdiction of this Court arises under the Admiralty law by the Jones Act, 46 U.S.C.App. § 688, and the diversity jurisdiction of the Court, 28 U.S.C. § 1332, the amount in controversy being in excess of Fifty Thousand Dollars ($50,000.00) exclusive of interest and costs.
Compl. and Jury Demand, ¶ 5. The First Amended Complaint states:
The jurisdiction of this Court arises under the Admiralty law and the diversity jurisdiction of the Court, 28 U.S.C. § 1332, the amount in controversy being in excess of Fifty Thousand Dollars ($50,000.00) exclusive of interest and costs.
First Am. Compl. and Jury Demand, ¶ 4.

. In fact a number of district courts have so held. See, e.g., Subaru Distributors Corp. v. General Ship Corp., 167 F.R.D. 342, 343 (D.Mass.1996); Lewis v. United States, 812 F.Supp. 620, 628 (E.D.Va.1993); Siragusa v. Standard Steamship Owners Protection, 710 F.Supp. 404, 407 (D.P.R.1989); Banks v. Hanover Steamship Corp., 43 F.R.D. 374, 376-7 (D.Md.1967). By contrast, the Fifth Circuit has held to the contrary, that explicit reference to Fed.R.Civ.P. 9(h) is not necessary. Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir.1991); T.N.T. Marine Service, Inc. v. Weaver Shipyards and Dry Docks, Inc., 702 F.2d 585, 587-88 (5th Cir.), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

. The dissent argues that "actions by a defendant should not control the question of whether a plaintiff meant to invoke admiralty jurisdiction.” Dissent at 264. We do not suggest that defendant-third party plaintiff Donjon was singlehandedly able to invoke admiralty procedure on behalf of plaintiff; rather that because no parties objected to Donjon’s motion, it became clear that all parties tacitly agreed to pursue an admiralty claim, and that this case would proceed, at least in part, as such. Moreover the fact that the plaintiffs joined in the Pretrial Order and are now appellants before us on this interlocutory appeal further demonstrates that they are cognizant of the invocation of admiralty jurisdiction. The dissent’s ensuing cite makes clear that actions of the plaintiff are relevant to what jurisdiction the plaintiff has invoked. Dissent at 264 citing Bryan v. Associated Container Transp., 837 F.Supp. 633, 641 (D.N.J.1993).

. The standard for summary judgment is well settled: "Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine issue of material fact, and the moving party is entitled to judgment as a matter ,of law. Fed. R. Civ. P 56(c). When, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party’s evidence is insufficient to carry that burden. The nonmoving party creates a' genuine issue of material fact if he provides sufficient evidence to allow a reasonable jury to find for him at trial. We give the nonmoving party the benefit of all reasonable inferences.” Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir.1998) (citations omitted).

. The district court cited, as relevant ppints in arriving at its decision, the fact that Foulk went out to the diving barge each morning and went home each evening; he did not eat breakfast or supper and he did not sleep on board’ the barge. Foulk, 961 F.Supp. at 698. Nevertheless, where Foulk ate or slept had nothing to do with the performance of his duties. Nor did the location where Foulk ate or slept in any way affect the maritime nature of his duties. For that reason, we will look at the duration of the job as ten days, without subtracting for the nights on shore.

. The dissent comments on the implications of this opinion vis-a-vis plaintiffs’ demand for a jury trial. Dissent at 264. We do not pass on this question as it is not presently before us at this interlocutory appeal of a grant of partial summary judgment. If this question were to come up at a later date, it would of course be governed by relevant legal precedent including Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) and Haskins v. Point Towing Co., 395 F.2d 737 (3d Cir.1968).