556 F.2d 180
 10 ERC 1423, 7 Envtl. L. Rep. 20,413
 AMERICAN DREDGING COMPANY, a Pennsylvania Corporation
authorized to do business in New Jersey,
Appellant, and Township of Logan, a
municipal corporation of the
State of New Jersey
v.
Colonel C. A. SELLECK, Jr., District Engineer, U.S. Army
Corps of Engineers, et al., Appellees.
 No. 76-1849.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 22, 1977.
Decided April 25, 1977.
 
 Grover C. Richman, Jr., Richman, Berry, Ferren & Tyler, Haddonfield, N. J., for appellant, American Dredging Co.
 Jonathan L. Goldstein, U. S. Atty., Carl R. Woodward, III, Asst. U. S. Atty., Chief, Environmental Protection Division, Newark, N. J., for appellees.
 Before GIBBONS and ROSENN, Circuit Judges, and HANNUM,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 American Dredging Company, the owner of a 2500 acre tract of land in Logan Township, Gloucester County, New Jersey, appeals from the dismissal of its complaint seeking injunctive and declaratory relief which would prevent federal officers charged with the enforcement of the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. § 401 et seq., and other federal statutes, from enforcing two cease and desist orders issued by the United States Army Corps of Engineers.
 
 
 2
 At issue is whether the landowner, having a permit from the New Jersey Department of Environmental Protection for the erection of a tidal floodgate on a stream dredged through a tidal marsh, must nevertheless apply to and obtain from the Corps of Engineers a permit for the floodgate. The landowner contends (1) that the permit is not required because the location of the proposed floodgate is not in the navigable waters of the United States; (2) that in any event the Corps of Engineers is estopped from insisting on a permit; and (3) that a statute delegates permit authority to the State of New Jersey.
 
 
 3
 The first contention is foreclosed by the opinion in United States v. Stoeco Homes, Inc.[1] There we stated the test for federal authority over navigable waters is twofold. In non-tidal waters, the test is actual navigability. In tidal waters, the test remains what it was at common law, namely, the ebb and flow of the tide.[2] Since the very purpose of a tidal floodgate is to control the ebb and flow of the tide, there is no question but that the Corps of Engineers has jurisdiction over the location.
 
 
 4
 The second contention requires some detailed reference to the facts. The property in question is bound on the north by the Delaware River, on the east by Repaupo Creek and Floodgate Road, on the southeast and south by New Jersey Route 44 and U.S. Route 130, and on the west by Raccoon Creek. Bisecting the property from the Delaware River south to Route 130 is a manmade waterway known as Klondike Ditch. The northern portion of the ditch, which extends about 4000 feet from the Delaware River, was created around 1900. In 1973, pursuant to an Army Corps of Engineers permit, the landowner dredged a temporary handling basin at the southern end of the northern portion of Klondike Ditch. From this large circular body of water the southern half of Klondike Ditch runs to Route 130. This southern portion was created in 1973 without a Corps of Engineers permit. There are culverts under Route 130 which drain into this portion of the ditch. The proposed floodgate would be on the portion of Klondike Ditch proximate to Route 130.
 
 
 5
 The southern extension of Klondike Ditch, as well as the proposed floodgate, were requested by the officials of Logan Township in order to provide drainage relief to areas of the Township south of Route 130 which were subject to periodic flooding. Encouraged by the Township, American Dredging applied to the New Jersey Department of Environmental Protection, Division of Water Resources, Water Policy and Supply Council, for a permit to extend the Ditch and to fill 830 acres northeast of it. On July 25, 1973, that agency issued Permit No. 5656, approving the project. The permit provides:
 
 
 6
 The applicant clearly agrees to install floodgates at or nearby the highway culverts along Klondike Creek or any extension thereof and such floodgates shall be reviewed and approved by the engineering staff of the Water Policy and Supply Council and made a part of this permit.[3]
 
 
 7
 While the object of the southerly extension of Klondike Ditch was to facilitate drainage through the highway culverts at low and normal tides, the object of the floodgates and associated dikes was to prevent a backflow through those culverts when tides were abnormally high.
 
 
 8
 The landowner filed the State Permit with the Corps of Engineers shortly after it was issued, but did not file an application for a federal permit for this work. Instead, the landowner proceeded with the excavation of the southern extension. In November 1973 a Corps of Engineers inspector observed the dredging operation near Route 130. As a result the Corps of Engineers issued a letter to American Dredging on December 11, 1973, stating that a federal permit was required for such work. On January 3, 1974, American Dredging submitted additional information to the Corps of Engineers, but did not make application for a permit. The excavation of the southern extension continued without a federal permit.
 
 
 9
 In December 1974, American Dredging obtained permission from the State of New Jersey for a modification of State Permit No. 5656 to install a single floodgate rather than one at each highway culvert. It started construction of the floodgate in January 1975. On January 24, 1975, the Corps of Engineers informed it that the ditch extension violated 33 U.S.C. § 403 and directed it to cease work.[4] On January 29, 1975, a Corps of Engineers telegram directed American Dredging to cease and desist from installing the floodgate.
 
 
 10
 American Dredging's estoppel argument relies upon the fact that the Corps of Engineers received a copy of State Permit No. 5656 eighteen months before its cease and desist order, and that American Dredging relied to its detriment on the Corps' inaction. Entirely apart from the question whether under United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), inaction of government agents may work an estoppel against it,[5] there is no factual basis for such an argument in this case. New Jersey State Permit No. 5656 provides:
 
 
 11
 This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained including, but not limited to permits and approvals from the following . . . United States Army Corps of Engineers.
 
 
 12
 Thus neither American Dredging nor the Corps of Engineers had any reason to assume from the mere filing of Permit No. 5656 that work could or would go forward without a Corps of Engineers permit. Even if there was a factual basis for an estoppel argument, however, United States v. California, supra would remain a barrier.
 
 
 13
 The statutory argument is predicated upon 33 U.S.C. § 566.[6] The statute was passed in 1906 and available legislative history sheds little light on its meaning. The government contends that it applies only to the Atlantic seacoast, not to the Delaware River estuary. It is not clear why this should be the case, but we need not determine the issue. Even if § 566 is applicable it was not complied with. It was not until February 4, 1975, that American Dredging submitted its plans for the floodgate to the Corps of Engineers. This was after the cease and desist orders had been issued, and so the Corps of Engineers had given the disapproval required by § 566. And there is no indication that in filing the State Permit and incomplete plans it was attempting to trigger the 30 day period during which the Chief of Engineers may disapprove plans approved by New Jersey.
 
 
 14
 One other point deserves mention. After the cease and desist order American Dredging filed an application for a federal permit for the floodgate. That application was not acted upon until after the District Court's decision. On April 26, 1976, the permit application was denied without prejudice to its resubmission in connection with another pending application. We express no view as to the merits of the April 26, 1976 denial, which may be reviewed in an appropriate proceeding. We reject appellant's contention that we can consider it in this appeal.
 
 
 15
 The judgment of the district court will be affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 498 F.2d 597 (3d Cir. 1974)
 
 
 [2]
 Id. at 610
 
 
 [3]
 Stream Encroachment Permit No. 5656, State of New Jersey, Department of Environmental Protection, Division of Water Resources, Water Policy and Supply Council, July 27, 1973
 
 
 [4]
 33 U.S.C. § 403 provides:
 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.
 
 
 [5]
 In that case the issue was raised whether the federal government could waive its ownership or its paramount rights in the submerged land of the coast of California between the low-water mark and the three-mile limit by the inaction of its agents. The Supreme Court found on the facts of the case that no such waiver had taken place. The Court went on to say that even assuming such a waiver, the interests of the federal government were greater than the state interests and so would make such a waiver ineffective: "The Government, which holds its interest here as elsewhere in trust for all the people, is not deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches or failure to act." 332 U.S. at 40, 67 S.Ct. at 1669 (footnote omitted)
 
 
 [6]
 33 U.S.C. § 566. Improvement by or under authority of State of New Jersey
 Authority is given to the State of New Jersey, or through it, to any commission, individual, corporation, or municipality, singly or collectively, designated by the legislature of said State, or by a commission appointed or authorized by said legislature, to improve the channels on the New Jersey seacoast, or any portion of said coast, or the waters adjacent thereto, lying between thirty-eight degrees fifty-six minutes and forty degrees twenty minutes north latitude, by dredging, or by the construction of piers, jetties, or breakwaters, or other river and harbor work of any description or nature adapted to attain the ends now pursued by the United States Government for the advantage of said coast or the relief of commerce: Provided, That such operations shall not encroach upon those portions of said coast, or the channels adjacent thereto, for which the United States Government may undertake similar work according to its own plans: And provided, That the plans for said work shall be placed on file with the Chief of Engineers of the Department of the Army for thirty days, during which time he is authorized to disapprove said plans and forbid such work if, in his judgment, the improvements when completed will interfere with navigation or with any works of the United States Government commenced or proposed to be made: Provided further, That no tolls or other charges upon commerce shall be imposed by those making such improvements: And Provided further, That this section shall not be construed as affecting in any way the jurisdiction and control of the Federal Government over any waters that may be improved in pursuance of the provisions thereof, nor as exempting such waters from the operation of the laws heretofore or hereafter enacted by Congress for the preservation and protection of navigable waters. The right to alter, amend, or repeal this section is expressly reserved.