**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3542
_____

RICHARD J. WILSON,
                                    Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; CREAMER-SANZARI JOINT
VENTURE; ARCH INSURANCE COMPANY
_____

On Petition for Review of an Order
of the Benefits Review Board
(BRB No. 19-00786)
_____

Argued: September 16, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: December 31, 2020)

Nicholas P. Giuliano [ARGUED]
Matthew M. Gorden
Stanton J. Terranova
Giuliano McDonnell & Perrone, LLP
170 Old Country Road, Suite 608
Mineola, New York 11501

        *Counsel for Richard J. Wilson*

Kate S. O'Scannlain
Barry H. Joyner
Gary K. Stearman

William M. Bush [ARGUED]
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave, NW, Room N-2119
Washington, D.C. 20210

*Counsel for Director, Office of Workers' Compensation Programs*

Gabriel E.F. Thompson [ARGUED]
Rabalais Unlad
1404 Greengate Drive, Suite 110
Covington, LA 70433

*Counsel for Creamer-Sanzari Joint Venture*

_____

**OPINION OF THE COURT**

_____

RESTREPO, *Circuit Judge*.

Petitioner Richard Wilson sustained hearing loss while working on a marine construction project and subsequently sought compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–50. An Administrative Law Judge ("ALJ") and the Benefits Review Board ("Board") dismissed Wilson's claim, finding that he was not covered under the LHWCA because he was not injured on navigable waters of the United States. Because we conclude that the ALJ and Board misconstrued the definition of navigable waters and that the waters where Wilson was injured were in fact navigable, we will reverse and remand for a determination of benefits.

## I. BACKGROUND

Congress enacted the LHWCA to provide compensation for maritime workers who are injured on the job. *Pa. Tidewater Dock Co. v. Dir., Office of Workers' Comp. Programs*,

2

202 F.3d 656, 658 (3d Cir. 2000). To be eligible for coverage, the LHWCA requires (1) that a worker be "engaged in maritime employment," 33 U.S.C. § 902(3); and (2) that his injury occur on "navigable waters of the Unites States" or an "adjoining [land] area," *id.* § 903(a). These two requirements are respectively known as the "status" and "situs" requirements. *Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 265 (1977). If "a worker is injured on the actual navigable waters in the course of his employment on those waters," then he also "satisfies the status requirement," for he was "required to perform [his] employment duties" "in a historically maritime locale." *Dir., Office of Workers' Comp. Programs v. Perini N. River Assocs.*, 459 U.S. 297, 324 (1983). Because this case does not concern any injury on land, the success of Wilson's claim hinges on whether he satisfied the situs requirement, *i.e.*, whether the waters on which he was injured were in fact navigable.

The facts are not disputed. From approximately 2010 to 2014, Respondent Creamer-Sanzari Joint Venture ("Creamer") employed Wilson as a marine construction worker on the New Jersey Route 3 bridge replacement project. The Route 3 Bridge spans the Lower Passaic River from Clifton to Rutherford, New Jersey at River Mile 11.8. At that location, the navigation channel was authorized to be 150 feet wide and ten feet deep. Wilson's primary job on that project was to drive steel piles for a cofferdam, which is a watertight structure that allows for construction below the waterline. From a float stage on the river, Wilson positioned and secured piles while a crane operator hammered the piles into the riverbed. This process routinely exposed Wilson to extremely loud working conditions and, in 2014, he was diagnosed with a permanent hearing impairment resulting from such conditions.

A few days after his diagnosis, Wilson filed a claim for benefits under the LHWCA. Creamer disputed Wilson's claim and the case was referred to an ALJ. Although the ALJ found that Creamer was a responsible employer and that Wilson's injuries were caused by his work on the Route 3 bridge, she dismissed Wilson's claim after finding that he was not covered under the LHWCA. Specifically, the ALJ concluded that Wilson failed to show that the Lower Passaic River was navigable at River Mile 11.8. Wilson appealed the ALJ's decision and the Board affirmed. Wilson now seeks judicial review of the Board's order.

## II. DISCUSSION

Wilson raises two issues on appeal. First, he asserts that § 920(a) of the LHWCA creates a situs presumption and argues that the ALJ erred by failing to apply it in her situs analysis. Second, Wilson argues, even if situs is not presumed, he provided sufficient evidence to show that the Lower Passaic River was navigable at River Mile 11.8, and that the ALJ and Board incorrectly reached the opposite conclusion by applying too narrow a definition of navigable waters. Although we find Wilson's presumption argument unavailing, we agree with Wilson that the ALJ and Board erred in finding that the Lower Passaic River was not navigable at River Mile 11.8.

### A. Standard of Review

We have appellate jurisdiction over this case under 33 U.S.C. § 921(c). We review the Board's decision only "to determine whether the Board acted in conformance with applicable law and within its proper scope of review." *Consolidation Coal Co. v. Benefits Review Bd.*, 629 F.3d 322, 326 (3d Cir. 2010) (internal quotations omitted). We exercise plenary review of the Board's legal conclusions, *Del. River Stevedores v. DiFidelto*, 440

4

F.3d 615, 619 (3d Cir. 2006), and "must independently review the record and decide whether the ALJ's [factual] findings are rational, consistent with applicable law and supported by substantial evidence" if those findings are challenged by a petitioner, *Helen Mining Co. v. Elliott*, 859 F.3d 226, 233 (3d Cir. 2017) (citations omitted).

**B. Situs Requirement**

We can preliminarily dispose of Wilson's presumption argument. Section 920(a) states: "it shall be presumed, in the absence of substantial evidence to the contrary[,] . . . [t]hat [a] claim [for compensation under this chapter] comes within the provisions of this chapter." 33 U.S.C. § 920(a). Wilson argues (1) that § 920(a) creates a situs presumption for claimants, and (2) that it shifts the burden of proving (or disproving) situs to respondents.

Both arguments are unavailing. First, situs is a threshold issue that must be resolved before § 920(a) can be applied. Congress enacted the LHWCA under its "admiralty and maritime jurisdiction," which gives it the authority to "alter or revise the maritime law which shall prevail throughout the country." *Crowell v. Benson*, 285 U.S. 22, 39 (1932) (citing U.S. Const. art. III, § 2). When Congress uses that authority, it is constrained by "the constitutional limits . . . [of] admiralty and maritime jurisdiction," *id.* at 55; *see also Ex parte Garnett,* 141 U.S. 1, 14 (1891), *Sea-Land Serv., Inc. v. Dir., Office of Workers' Comp. Programs*, 540 F.2d 629, 635 (3d Cir. 1976), which for maritime torts includes only injuries that occur on navigable waters of the United States and certain adjoining land areas, *see Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971); *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 (1985) (explaining that the LHWCA definition of navigable waters was

expanded to include certain shoreside areas). Thus, the LHWCA's situs requirement is essentially a jurisdictional determination, which means its "existence is a condition precedent to the operation of the statutory scheme." *Crowell*, 285 U.S. at 54.

Second, the burden of proving situs lies with the claimant. Under the LHWCA, administrative adjudications "shall be conducted in accordance with the [Administrative Procedure Act ("APA")]," 33 U.S.C. § 919(d), and the APA states that, "[e]xcept as otherwise provided by statute, the proponent of a[n] . . . order has the burden of proof." 5 U.S.C. § 556(d). In *Greenwich Collieries*, the Supreme Court concluded that courts should "not lightly presume exemptions to the APA." *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 271 (1994). In that case, the Director argued that § 923(a) exempted the LHWCA from the APA's burden of proof rule. *Id.* That provision of the statute states that the Board is not bound by certain rules of evidence and procedure. *Id.* The Supreme Court disagreed with the Director, however, because it was reluctant to assume that Congress intended to group the burden of proof in the same category as evidentiary and procedural rules, noting that the burden of proof is a rule of substantive law. *Id.* Moreover, the Court explained, the LHWCA explicitly states that the APA is applicable "notwithstanding any other provisions of this chapter." *Id.* (quoting 33 U.S.C. § 919(d)).

We have subsequently held that a claimant who "seeks to have an order issued that she is entitled to benefits under the [LHWCA] . . . bears the burden of proving entitlement to benefits by a preponderance of the evidence." *Maher Terminals, Inc. v. Dir., Office of Workers' Comp. Programs*, 992 F.2d 1277, 1282 (3d Cir. 1993). For the reasons explained above, we do not think § 920(a) applies to situs determinations. Even if it did, however, §

920(a) does nothing more than create a rebuttable presumption that eases the claimant's burden of proof. *See Greenwich Collieries*, 512 U.S. at 280. It does not shift the burden of proof to the respondent. *See id.* at 279–80 (explaining that a rebuttable presumption only places a burden of production on the respondent).

## C. Navigable Waters

We thus turn to the dispositive issue in this case: whether Wilson established that the Lower Passaic River was navigable at River Mile 11.8. Wilson argues that the ALJ and Board misconstrued the definition of navigable waters and, when the proper definition is applied, it is apparent that there is sufficient evidence showing the river was navigable at the Route 3 bridge location. We agree.

Navigability is a vast concept. Depending on the legal context, the definition greatly varies. *See Kaiser Aetna v. United States*, 444 U.S. 164, 170–72 (1979). In this instance, because the LHWCA is federal maritime law, we must apply a definition of navigable waters that is used for demarcating Article III admiralty jurisdiction. *See Perini N. River Assocs.*, 459 U.S. at 306, 323; *Lockheed Martin Corp. v. Morganti*, 412 F.3d 407, 412 n.2 (2d Cir. 2005). The ALJ, Board, and parties used the "navigable-in-fact" definition. Therefore, we will as well.[1] Under that standard, "[a] body of water is navigable for purposes of

_____

[1] Due to the fact that the Lower Passaic River is tidally influenced at River Mile 11.8, the Director pointed out that Wilson also could have argued the river was navigable in that location because "waters that are affected by the ebb and flow of the tide are part of the 'navigable waters of the United States' for purposes of the federal government's admiralty jurisdiction." Dir. Supp. Ltr. Br. at 3 (Sept. 2, 2020). But, Wilson did not raise that argument before the agency, and we can resolve the situs issue based on the Lower Passaic River being navigable in fact. Therefore, we need not address any alternative bases for admiralty jurisdiction, including our "ebb-and-flow" test. *See United States v. Stoeco*

federal admiralty jurisdiction if it is one that, by itself or by uniting with other waterways, forms a continuous highway capable of sustaining interstate or foreign commerce." *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1253 (3d Cir. 1994) (citing *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563 (1870)).

The ALJ and Board seemed to misunderstand that a waterway can be found navigable in fact only if there is evidence that the waterway is capable of sustaining "commonly-used large commercial ships"[2] or if there is evidence of "*present* commercial use." App. 14, 15, 22. A waterway, however, is navigable in fact simply if it is capable of sustaining any type of interstate or foreign commerce. *See Morganti*, 412 F.3d at 413 (applying navigable-in-fact test with a focus on physical characteristics of the waterway to determine if it was capable of supporting interstate commerce). Demonstrating present commercial use is only one of the acceptable methods that a claimant may use to establish navigability. *See Price v. Price*, 929 F.2d 131, 135 (4th Cir. 1991). By construing the navigable-in-fact standard too narrowly, the ALJ and Board overlooked evidence which established that the Lower Passaic River was navigable in fact at River Mile 11.8.

The record shows that commercial vessels operating on the Lower Passaic River were able to transit portions of the river where the channel was as shallow as four feet and

---

*Homes, Inc.*, 498 F.2d 597, 610 (3d Cir. 1974); *American Dredging Co. v. Selleck*, 556 F.2d 180, 181 (3d Cir. 1977). The Court also extends its gratitude to the Director for her supplemental letter brief and participation in argument in response to the Court's requests.

[2] The ALJ defined such vessels as "ocean-going cargo carrying vessels—container-ships, car carriers, and bulk carriers." App. 14.

as wide as seventy-two feet.[3]  In 2008, the United States Army Corps of Engineers ("ACE") conducted a survey of the river and noted that the "authorized federal navigation channel . . . [extends from] the mouth of the river . . . [through River Mile] 15.4,"App. 32 and that the river "has been utilized primarily for commerce and industry for almost two centuries," App. 36. The report found that from 1997 to 2006 approximately twenty-eight million tons of liquid fuel were transported on the river.  In one of the busiest stretches, from River Mile 1.2 to 2.5, the controlling depth of the channel was four feet and, at River Mile 4.6, the channel was seventy-two feet wide.

At River Mile 11.8, the channel depth exceeded four feet and was 150 feet wide. The ALJ and Board acknowledged that the channel was dredged to ten feet deep and 150 feet wide but reasoned that such evidence did not establish navigability because River Mile 11.8 had not been dredged since 1931 and it was unclear whether the "[c]hannel depth . . . [had] been constrained by . . . the natural siltation process." App. 14 (edit in original), 23 n.5. The ACE report notes, however, that River Mile 8.1 was last dredged to ten feet in 1932 yet, in 2008, the depth at River Mile 8.1 was nine feet.  Moreover, in his briefing to the ALJ and Board, Wilson cited the National Oceanic and Atmospheric Administration ("NOAA") Navigation Chart for the Passaic River, which reported that the segment of the channel containing River Mile 11.8 was seven feet deep in 2017. *See* NOAA Chart 12337, https://www.charts.noaa.gov /OnLineViewer/12337.shtml (last visited Dec. 11, 2020)

---

[3] All depths are reported in terms of Mean Low Water, which is the average depth at low tide.

(The Route 3 bridge is located between the Nutley and Rutherford Reach and the corresponding depths are located in the lower-right quadrant of the chart).

In light of such evidence, we are able to conclude that the Lower Passaic River at Mile 11.8 was navigable in fact in 2010. The record shows that there were no impediments blocking the navigation channel between its confluence with the Newark Bay and the Route 3 bridge. And, at all points in between, the channel exceeded four feet in depth and seventy-two feet in width. Because we look to whether a waterway "by itself or by uniting with other waterways, forms a continuous [commercial] highway," *Reeves*, 26 F.3d at 1253, and because commercial vessels could navigate within the noted physical constraints, we conclude that the river was navigable in fact at River Mile 11.8.

### III. CONCLUSION

For the foregoing reasons, we reverse and remand to the Benefits Review Board for a determination of benefits.